OYERTON, J.
 

 For the purpose of erecting a building to conduct its business, plaintiff purchased a lot, together with the improvements thereon, on which was located a tenement house, or half of a double tenement house, built some 50 years ago. The property in question is located on St. Charles street, in the city of New Orleans. To construct the building, plaintiff demolished the tenement house purchased by it, but left intact a party wall that separated the house it purchased from an adjoining tenement house; the two tenement houses having been so constructed, in relation to each other, as to constitute, in effect, a double tenement house. Both houses were supported by the party wall, which served as one of the four walls of each-building. The party wall, separating the two buildings, had not had any openings in it, during its 50 years of existence, prior to plaintiffs purchase. In constructing its building plaintiff did not exercise its right of building against the party wall, but left a space of about 12 feet, fpr a driveway, between the outer wall of its building and the party wall, and plastered the latter so as to- improve its appearance and to cause it to reflect light into its building.
 

 Defendant purchased the adjoining tenement house, or the remaining half of the double tenement house, and remodeled and rehabilitated it, the party wall still serving as one of the four walls of its building. In remodeling its building, defendant found that some of the bed and bath rooms in it would be too dark for use, which proved to be the case. Defendant undertook to remedy this defect by cutting openings in the party wall, and for that purpose obtained a permit from the city engineer, authorizing it to cut 28 openings, though it seems that, while the wall is not a small one, defendant does not expect to have to cut so many. When defendant began cutting the openings, plaintiff protested, and defendant ceased. Shortly after this, the commission council of the city passed an ordinance, which will be referred to again, purporting to authorize the making of such openings. Some 80 or 90 days after the passage of the ordinance, defendant again commenced to cut openings in the wall, and cut a few, intending to put windows of some description there, but did not complete the work.
 

 Immediately after plaintiff learned that defendant was cutting openings in the wall, it petitioned the Civil District Court for a writ of injunction to prohibit defendant from doing so, and also sued for a mandatory injunction to force defendant to fill the openings cut, and to restore conditions to their former state. A temporary restraining order was issued on this petition, and also a rule to show cause why the prohibitory injunction prayed for should not issue. Defendant, in response to the rule, filed its answer.
 

 Plaintiff relies primarily on article 696 of the Civil Code. It urges that this article makes it unlawful for defendant to cut' openings in the wall, and that the right to prevent the cutting of these openings is a property right of which it cannot be,deprived without its consent. The article reads as follows:
 

 “One neighbor cannot, without the consent of the other, open any window or aperture through the wall held in common, in any manner whatever, not even with the obligation, on his part, to confine himself to lights, the frames of which shall be so fixed within the wall that they cannot be opened.”
 

 This article would unquestionably be decisive of the case were it not for Ordinance No. 9756, Commission Council Series, adopted June 7, 1927, and Act No. 76 of 1910, under which the ordinance was obviously passed.
 

 
 *571
 
 To quote the act first, it reads as follows:
 

 “The city council, or-other governing body, in municipalities of over 100,000 inhabitants is hereby authorized and empowered, to adopt ordinances with the proper penalty for their violation thereto attached, providing for or relating to the construction, equipment, alteration, repair, and removal of buildings, structures, walls, and party walls.
 

 “Sec. 2. Be it further enacted, etc., that such ordinances shall prevail over and supersede any existing laws on the statute books of the state, and that all law or parts of laws in conflict with this act be ánd the same are hereby repealed.”
 

 Section 1 of the ordinance, which is the important section, reads as follows:
 

 “That existing buildings situated within the fire limits, where supporting walls are brick or masonry, whether the same be party walls or otherwise, may be remodeled or repaired to conform to their present construction where the outside walls of such buildings are no longer used to support an adjoining building or where there is separation between buildings, such remodeling may consist of the installation of approved fire windows for the admission of ample ventilation and light. For residence buildings distance between buildings must be in accordance with the requirements of the Building Code, provided, however, that in the event the co-owner at any time in the future should erect an adjoining building said co-owner will have the right to close said windows and use the party wall as originally intended.”
 

 Section 2, which is the remaining section of the ordinance, merely makes it an offense to hinder or obstruct the carrying out of section 1, or to violate the provisions of that section. The ordinance contains no repealing clause.
 

 The act, quoted above, is sufficient, in terms, to authorize the passage of the ordinance. If the act be constitutional, the passage of the ordinance put into operation the second section -of the
 
 aci,
 
 and the ordinance, from that time, by virtue of the legislative will, superseded article 696 of the Code, quoted above, within the sphere within which the ordinance operates, in so far, at least, as the ordinance is in conflict with that article. The Legislature may authorize municipalities to pass ordinances on matters properly coming within the sphere of municipal regulation, and provide that such ordinances, if adopted, shall supersede state laws in conflict with them. 2 McQuillin Municipal Corporations, § 648, p. 1421, and section 843, p. 1803.
 

 But plaintiff urges that the act, authorizing the passage of the ordinance, is unconstitutional. One of the reasons why plaintiff urges that it is unconstitutional is because it is a local law, and the notice of the intention to apply for its passage, required by article 50 of the Constitution of 1898, under which the act was passed, was not published. This article provided that no local or special law should be passed, not enumerated in article 48 of that Constitution, unless notice of the intention to apply for its passage was published in the locality to be affected, free of cost to the state, for at least 30 days prior to its introduction, the act to contain a recital that the notice was published. The act, if it be deemed a local law, contains no such recital ; therefore it must be considered that no such notice was published.
 

 In 25 R. C. L. § 66, p. 815, verbo, “Statutes,” .it is said:
 

 “In determining whether a law is public, general, special, or local, the courts will look to its substance and practical operation rather than to its title, form, and phraseology, because otherwise prohibitions of the fundamental law against special legislation would be nugatory.”
 

 In the statute, in this instance, the Legislature has undertaken to form a class of municipalities containing populations exceeding 100,000, and to a-uthorize these municipalities to adopt ordinances on the subject-matter under consideration, and to provide that these ordinances shall supersede any statute of the state that may conflict with them. In words and form the statute is of a general nature. However, in its substance and operation it is not; for the classification adopted may be said, when regard is had to conditions existing at the time of the adoption of the statute, to have been purely a
 
 *573
 
 fictitious classification. At the time the act was adopted there was but one municipality in the state containing a population exceeding 100,000, and that municipality was the city of New Orleans; nor were there even any prospects that the state would have in the immediate future other municipalities containing such a population. Even to this day, although nearly 18 years have passed since the passage of the act, there is but one municipality in the state containing the population required by the act. To hold, under these circumstances, that this act is a general one, would be to hold that, by a mere form of words, the Legislature may make wha.t is in reality a local act a general one, and thereby defeat not only the requirement as to publication of intention, but also those prohibitions, or some of them, in the Constitution against enacting, under any circumstances, local laws on certain subjects.
 

 But it does not follow that, because the statute is in reality a lo'cal one, and because notice of the intention to introduce it was not published, the statute must be declared unconstitutional. The statute is a mere delegation of authority to the governing bodies of a class of municipalities to do certain things; the city of New Orleans being, as we have said, the only municipality in the state coming within that class. The act may be regarded as operating, in effect, as an amendment to the charter of New Orleans. It has been held that the Legislature, under the Constitution of 1898 and under that of 1913, containing a similar requirement as to the publication of notice and similar prohibitions as to the enactment of certain local and special laws, could, without publication of notice of intention, grant a charter to a municipality containing a population exceeding 2,500, or amend its charter. State ex rel. Fortier v. Capdevielle, 104 La. 561, 29 So. 215; Mulhaupt v. Shreveport, 126 La. 780, 52 So. 1023; State v. Landry, 139 La. 451, 71 So. 763. The correctness pf these decisions may be questioned, but it would not do to depart from them now. Since they were rendered, and especially since the first was rendered, statutes have been passed amending charters of municipalities and granting charters to such subdivisions without publication of the notice of intention to apply for such local legislation. This course has been pursued especially in relation to the city of New Orleans. It would not do to jeopardize this legislation now by departing from these rulings.
 

 It is also urged that the act under consideration violates article 49 of the Constitution of 189S by indirectly enacting a local law by the partial repeal of a general one In our view the act is not amenable to that objection. It is the mere granting of authority to pass certain ordinances; nor is the ordinance itself amenable to the objection.
 

 It is also urged that the act' and the ordinance are unconstitutional, because they violate the Fourteenth Amendment to the Constitution of the United States and also section 2 of article 1 of the Constitution of this state, adopted in 1921, and article 2 of the Constitution thereof, adopted in 1898, by taking plaintiff’s property without due process of law. Neither the act nor the ordinance is subject to this objection. Both were passed in the exercise of the police power, and have in view the protection of public health, by making provision for light and ventilation in buildings situated as is the present one. Every one holds his property, under the Constitution, subject to a legitimate exercise of the police power.
 

 It is further urged that the act and the ordinance are in violation of the Constitution of the United States, in that they deny plaintiff the equal protection of the laws. This objection to the act and to the ordinance is not well founded. Both the act and the ordinance operate equally on all who own
 
 *575
 
 property, similarly situated, within the territory affected by these enactments. Nothing more is required. Bowman v. Lewis, 101 U. S. 22, 25 L. Ed. 989.
 

 It is also urged that the act was repealed, long prior to the passage of the ordinance, by Act 159 of 1912, and particularly by section 70 thereof. This act is the charter of the city of New Orleans. Section 70 contains the repealing clause of the act. The section repeals all laws or parts of laws in conflict with the act; retains all laws upon the same subject-matter not inconsistent with it, and all the provisions of certain acts, which are enumerated, among which is not the present act, not inconsistent with the act. There is nothing in conflict between the act of 1910 and the one of 1912 that we are able to find. The enumeration of certain acts which are retained does not indicate that others not enumerated are repealed, for by the clear terms of the act such others are retained when not in conflict with the act. In our view, the act of 1910 has not been repealed.
 

 Before closing we may say that the evidence taken on the trial of the rule nisi shows, we think, that the party wall, or wall held in common by plaintiff and defendant, will not be appreciably weakened by the cutting of the openings for windows, and that the placing of windows in the wall will not appreciably affect the reflection of light from it.
 

 The trial judge, after hearing the rule nisi, refused to issue the -preliminary injunction prayed for, and dissolved the restraining order. We think that the judgment is correct.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 ST. PAUL, .7., concurs in the result, but not in the holding that Act 76 of 1910 is a local law,