[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 78 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 79 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 80 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 81 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 82 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 83 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 84 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 85 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 86 
This is a suit for an injunction in which the plaintiff, Alphonse Peck, a taxpayer and a resident of the City of Lafayette, Parish of Lafayette, seeks to restrain certain officials of this State and the City of New Orleans from carrying out the provisions of Act 84 of 1940, which provides for the use of mechanical voting machines in elections in the State of Louisiana and makes such use mandatory with respect to the City of New Orleans. Plaintiff asserts that the statute is unconstitutional, assigning numerous reasons therefor, and additionally proclaims, in the alternative, that the State officials are attempting to exceed authority granted to them by the law.
In order that a clear understanding may be had of the many questions presented in *Page 88 
the case, it is apt to set forth a brief history of the legislation under attack. Prior to the year 1940, the use of voting machines in elections was not authorized in Louisiana. By Section 7 of Article 8 of the Constitution of 1921, it was provided that "in all elections by the people the electors shall vote by ballot, and the ballots cast shall be publicly counted." And Section 15 of the same Article declares in part: "All elections by the people, except primary elections * * * shall be by official ballot, printed and distributed at the expense of the State; * * *."
The Legislature, at its regular session of 1940, being of the belief that the use of voting machines in elections would provide an efficient modern method by which votes can be cast and counted, undertook to submit certain constitutional amendments to the people and to pass laws providing for balloting by use of voting machines throughout the State or in one or more parishes or cities. And, by Act 84, legislation was enacted authorizing the use of such machines in all elections to be held in the State. The validity, effect and operation of this statute was made dependent upon the approval by the people of the constitutional amendments proposed by Acts 372 and 375. These two acts were thereafter submitted to the electorate at the congressional election of 1940 and, upon receiving a favorable vote, became a part of the Constitution, amending Sections 7 and 15 of Article 8 thereof so as to read as follows:
Section 7. "In all elections by the people the electors shall vote by ballot and the ballots cast shall be publicly counted; *Page 89 
provided however, that the Legislature may provide for balloting by use of voting machines, and the manner of installation throughout the State, or in one or more parishes or cities, of mechanical voting machines.
"Upon installation of such machines, the provisions of this Constitution which are not appropriate to balloting by use of such machines, shall not be applicable to those places where said machines are being used, but insofar as is practicable and possible, all such provisions shall remain effective.
"In all elections by persons in a representative capacity, the vote shall be by viva-voce.
"Any legislation adopted at the Regular Session of the Legislature of 1940, based upon this proposed amendment relative to the installation of and balloting by use of voting machines shall be validated and ratified by the adoption of this amendment."
Section 15. "All elections by the people, except primary elections and municipal elections in towns having a population of less than twenty-five hundred, when such elections are not held at the same time as general State elections, shall be by official ballot, printed and distributed at the expense of the State; and such ballots shall have printed thereon, and at the head and immediately preceding the list of names of the candidates of each political party or nominating paper, a specific and separate device adopted by such political party by which the political party and the candidates of such political party or nominating paper may be indicated. By stamping such device at the head of the list of candidates of each *Page 90 
political party, or nominating paper, the voter may indicate that his vote is for the entire or straight ticket of the particular party or nominating paper employing the particular device allotted to such political party, or nominating paper. When the voter does not desire to vote an entire straight party ticket, he may vote for candidates of any political party or nominating paper, by stamping or marking with (X) a blank space to be left opposite the names of each candidate on said official ballot; provided, however, that the Legislature may provide as is provided in Section 7 of this Article for voting in any parish or municipality within the State by means of voting machines, which shall permit the voter to designate his choice in said machine substantially as required by this Section.
"Any legislation adopted at the Regular Session of the Legislature of 1940, based upon this proposed amendment, shall be validated and ratified by the adoption of this amendment."
Upon the approval of the amendments, the enabling statute (Act 84 of 1940) went into full force and effect.
Act 84, which contains 22 sections, authorizes the use of voting machines in primary, special and general elections throughout the State. The use of the machines is declared to be mandatory in all parishes containing a municipal corporation, the population of which exceeds 150,000 (which means the City of New Orleans) and optional as to any other parish. However, provision is made for the holding of an election by which the voters of any particular parish may determine whether *Page 91 
they desire that the parish will be governed by the Statute. In the event that any parish so determines, it is provided in Section 19 that the State will defray one-half of the expenses incident to the purchase, installation, maintenance, etc., of the voting machines and the other half is to be borne by the parish. In the case of the City of New Orleans, where the use of the machines is made mandatory, the expense of purchase, etc., is likewise to be divided equally between the City and the State. Section 19 further provides that the voting machines shall be purchased by a Board composed of the Governor, the Lieutenant Governor, the Secretary of State, the Attorney General and the Speaker of the House of Representatives. This Board is directed to give ten days' notice for the filing of bids in the office of the Secretary of State and to publicly open the bids at the expiration of said ten days.
Pursuant to the provisions of the statute, the Board to Purchase Voting Machines advertised for bids for the purpose of furnishing to the City of New Orleans 435 machines. The lowest bid in response to the call was filed by the Shoup Voting Machine Corporation of Philadelphia which agreed to furnish the necessary machines for a total sum of $494,160 cash. This bid was accepted by the State Board.
Thereafter, the plaintiff filed a petition in the Nineteenth Judicial District Court for the Parish of East Baton Rouge in which he sought to have the State Board, through its component members, the Governor, the Lieutenant Governor, the Secretary of State, the Attorney General and *Page 92 
the Speaker of the House of Representatives; the City of New Orleans, through its Mayor, Robert S. Maestri; Andrew P. Tugwell, State Treasurer, and Ludlow B. Baynard, State Auditor, prohibited and enjoined from taking any further action relative to the purchase of, or payment for, voting machines and from renting or leasing any voting machines for use in the City of New Orleans and Parish of Orleans under the provisions of Act 84 of 1940. The grounds advanced by the plaintiff for the injunctive relief prayed for are (1) that Act 84 of 1940 is unconstitutional in its entirety for the reason that it has been enacted in violation of Section 16 of Article 3 of the Constitution of Louisiana; (2) that the statute is arbitrary and discriminatory and denies plaintiff the equal protection of the laws in violation of the Fourteenth Amendment of the Constitution of the United States; (3) that it violates the provisions of Section 4 of Article 4 of the Constitution of Louisiana and (4) that it violates the provisions of Sections 7 and 15 of Article 8 of the Constitution of Louisiana as amended by Acts 372 and 375 of 1940 and also, Section 4 of that Article.
It is further alleged that Section 19 of Act 84 of 1940 is unconstitutional because that section contains provisions for the purchase of voting machines in violation of Section 16 of Article 3 of the Constitution and that, if the section is applied so as to permit the defendants to withdraw monies out of the General Fund of the State Treasury for the purchase, installation, maintenance, etc., of voting machines, then it violates Sections 1, 9 and 10 of *Page 93 
Article 4 of the Constitution and Sections 7 and 15 of Article 8 of the Constitution as amended.
It is further averred on information and belief that the defendants are consulting and negotiating for the renting and leasing of voting machines for use in the City of New Orleans and that, in the event the court should find that Act 84 of 1940 and Sections 3 and 19 thereof are constitutional, then the defendants should be restrained from renting or leasing such machines for the reason that such action on their part would violate Sections 7 and 15 of Article 8 of the Constitution as amended and would also violate Section 19 of Act 84 of 1940. And further, in the alternative, it is alleged that Item 72, § 2 of Act 44 of 1940 (the General Appropriation Act), whereby money has been appropriated to defray the State's share of the cost of purchase, rental or lease of voting machines, is unconstitutional for the reason that such appropriation violates Sections 7 and 15 of Article 8 of the Constitution as amended and also Act 84 of 1940, which limits the method of acquiring voting machines to the purchase thereof. Again, in the alternative, it is alleged that the City of New Orleans is without authority to provide funds for the rental, lease or purchase of voting machines for the reason that said City has no money in its treasury or otherwise appropriated to pay its share for the cost of the rental, lease or purchase of said machines, has made no appropriation therefor in its budget and could not lawfully contract therefor without violating Section 12 of Act 4 *Page 94 
of 1916 and Section 24 of Article 14 of the Constitution.
Upon the showing made by the plaintiff in his petition, the District Court issued a temporary restraining order prohibiting the defendants from taking any further action relative to the purchase of voting machines until after the trial of a rule nisi for a preliminary injunction and they were further ordered to show cause why such injunction should not be issued.
On the day of the trial of the rule nisi, the defendants, State Treasurer, State Auditor and the Board to Purchase Voting Machines, through its component members, appeared and resisted plaintiff's demands on the following grounds: (1) that Act 84 of 1940 is legal and valid and does not violate any of the provisions of the Constitution of Louisiana; (2) that Section 19 of the Act gives the Board to Purchase Voting Machines full authority and discretion to purchase said machines and that, in letting out bids for their purchase and in accepting the bid of the Shoup Voting Machine Corporation, it acted in conformity with the power vested in it; (3) that, since Section 19 of the Act provides that the one-half payment of the purchase price of the voting machines shall be paid out of the General Fund, the Board, the State Treasurer and Auditor have the legal right to pay over the State's share of the cost of the machines out of the General Fund without any specific appropriation being made by the Legislature; (4) that Act 84 of 1940 has become part of the State Constitution by virtue of the amendments adopted by the people at the general election held November *Page 95 
5, 1940, wherein any legislation enacted by the Legislature of 1940 pertaining to voting machines was validated and ratified; (5) that the City of New Orleans has already paid $25,000 on account of its one-half share of the cost of the voting machines; that said City, through its Commission Council, has pledged itself for the payment of the balance due by it by resolution which is in all respects valid and legal and (6), in the alternative, that, in the event the court should hold that the State's share of the cost of voting machines for the City of New Orleans had to be specially appropriated by the Legislature, the contract to purchase the machines from the Shoup Voting Machine Corporation for $494,160 cash should nevertheless be upheld and that the $123,000 appropriated by the Legislature in Item 72 of Act 44 of 1940 be declared to be at the disposal of the State Board for the purpose of paying a portion of its share of the cost price of the machines.
The City of New Orleans likewise denied that Act 84 of 1940 is unconstitutional and further asserted that, while no appropriation had been made by it in its budget for 1941 to defray its one-half share of the cost of the voting machines, it had turned over to the State the sum of $25,000 from monies not otherwise appropriated on account of its portion of the price and that the Commission Council of the City, in recognition of its obligation, adopted a resolution on September 5, 1941, pledging itself to appropriate in its budget for 1942 a sum necessary to pay the balance of its share of the cost of the voting machines. *Page 96 
The Shoup Voting Machine Corporation intervened in the proceedings on the side of the defendants and prayed (1) that Act 84 of 1940 be declared legal and valid; (2) that the bid made by it and the acceptance thereof by the State Board be recognized as valid; (3) that the State Board be authorized to purchase the machines from it in accordance with the terms of said bid; (4) that one-half of the cost of the machines be paid by the State out of the General Fund or, in the alternative, that the sum of $123,000, appropriated by the Legislature in Item 72 of Act 44 of 1940, be paid in cash and the remainder of the State's portion of the purchase price be paid either by subsequent appropriation by the Legislature or otherwise in any lawful manner and (5) that the resolution of the Commission Council of the City of New Orleans, whereby it pledged itself to make provision for the balance due by the City of its share of the purchase price of the machines, be approved as a legally enforcible commitment of said City.
Interventions were also filed in the proceedings by various residents and taxpayers of the City of New Orleans who joined the defendants in resisting the plaintiff's demands.
After a hearing on the rule nisi for the issuance of a preliminary injunction, the District Judge, being of the opinion that Act 84 of 1940 is unconstitutional, made the rule absolute and granted a preliminary injunction as prayed for by the plaintiff. The defendants and the intervenor, Shoup Voting Machine Corporation, thereupon applied to the Judge for suspensive appeals. *Page 97 
These applications were refused. Subsequently, upon application for such appeals being presented to this court by the defendants and the intervenor, separate suspensive appeals were granted by us under the authority of Act 29 of 1924 and Act 15 of the Second Extra Session of 1934. The appeals have been consolidated here and the matter has been submitted for our decision.
The first question presented in the case is whether Act 84 of 1940 embraces more than one object and, if so, whether those objects are indicated in the title of the statute. Section 16 of Article 3 of the Constitution of 1921 provides:
"Every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object."
To determine judicially whether a law is violative of the foregoing constitutional provision, it is necessary first to examine the body of the Act in order to ascertain the purpose or aim of the statute. State v. Morton, 182 La. 887, 162 So. 718.
Act 84, as we have above stated, contains 22 sections. Section 1, which declares that the Act is the "Voting Machine" Law, contains various definitions and provides that the word "election" as used therein shall mean "all elections, general or special of every kind or character, including municipal, parochial, state and national primaries." By Section 2, it is provided that the Act shall control wherever there is a conflict between its provisions and those of the primary and general election laws of the State. Section 3 declares that the use of voting machines *Page 98 
in all parishes containing a municipal corporation, the population of which exceeds 150,000 (meaning the City of New Orleans), shall be mandatory and optional as to all other parishes. This section and the following sections 4 to 17 inclusive contain detailed provisions respecting the mechanical features which the voting machines must possess, the manner in which the machines are to be used in elections and other matters incidental to the storage of the machines while not in use. By Section 19 of the Act, a Board to Purchase Voting Machines is constituted and this Board is given detailed powers with respect to the selection and purchase of the machines, the cost of which is to be divided equally between the State and the parishes in which the machines are to be put in use. Section 20 declares that the Act shall not become operative or effective until the ratification and adoption of two constitutional amendments embodied in House Bills No. 129 and No. 26 (which later became Acts 375 and 372 of 1940) amending and modifying Sections 7 and 15 of Article 8 of the Constitution. By Section 21, it is provided that, in the event the Act is declared to be partially invalid by the courts, such partial invalidity shall not affect the remainder of the statute. Section 22 repeals all laws in conflict with the provisions of the Act.
A fair reading of the body of the Act as a whole reveals that the sole object of the enactment is to authorize the use of voting machines in all elections to be held in the State of Louisiana and to set up the necessary machinery by which its declared purpose can be made effective. *Page 99 
The title of the law provides as follows:
 "An Act
"To provide for Voting Machines and the use thereof in primary and general elections; defining terms appropriate and appertaining thereto; making the use of said machines mandatory in certain cases and providing for the optional use thereof in others; providing for the use or experimental use of said voting machines; setting forth the requirements of such machines; prescribing the methods of conducting elections by and with the use of such voting machines; directing how the tabulation of votes in elections conducted by and through the use of said machines shall be made; prescribing the method of canvassing the returns of elections conducted with the aid of such voting machines; and providing a penalty for the unlawful possessing of such voting machines, the keys thereto or the parts or appurtenances thereof, and prescribing a penalty for unlawfully tampering or attempting to tamper with, deface or impair such voting machines or any of the paraphernalia connected therewith or appertaining thereto, and providing for other matters relating to the adoption and use of such voting machines and the duties of the officials charged with the operation thereof, all with the proviso that the adoption and use of voting machines is authorized by proper constitutional amendment."
The initial complaint of the plaintiff is that the body of the Act is broader than its title because, in the body of the Act, the use of voting machines is authorized in all elections, primary, general and special, *Page 100 
whereas, the title indicates merely that the machines are to be used in primary and general elections.
This objection is not well-founded. The use of the words "primary and general elections" in the title of the Act clearly indicates an intention to cover all elections, including those specially called, at which candidates for public office are to be voted upon. The only other elections, of which we are advised, which might not be included in the language "primary and general elections", are special elections held in parishes or municipalities where the electors are to vote upon a bond issue or upon a specific question not dealing with the election of candidates for office. If the body of the Act, in providing for the use of voting machines at such special elections, as distinguished from primary or general elections, is broader than the purpose indicated in the title, it does not follow that the statute should be held unconstitutional as a whole for that reason, for the part of the act providing for the use of voting machines at such special elections may be treated as surplusage. It is the well-settled jurisprudence of this State that, where an Act contains more than one object and only one of those objects is expressed or indicated by the title, the entire statute will not be held unconstitutional on that score unless the object, which is not expressed in the title, is so wholly dependent upon the expressed object that it cannot be separated therefrom without destroying the intention manifested by the Legislature in passing the Act. See State v. Exnicios, 33 La.Ann. 253, State ex rel. *Page 101 
Mouton et al. v. Judge, 49 La.Ann. 1535, 22 So. 761, State v. Ferguson, 104 La. 249, 28 So. 917, 81 Am.St.Rep. 123, State v. Duson, 130 La. 488, State v. Hincy, 130 La. 620, 58 So. 411, and State v. Beeling, 169 La. 785, 126 So. 61.
The next question raised by the plaintiff is that there is nothing in the title of the Act which refers to the provisions contained in Section 19 thereof respecting the proration of costs and expenses incident to the purchase, installation, maintenance, storage, moving, use and operation of voting machines. The short answer to this proposition is that it was unnecessary to mention this in the title of the Act. The object of the law, as we have said, is to provide for the use of voting machines in primary and general elections. This object is indicated in the title. The manner in which the machines are to be acquired for use in such elections is a mere incident to the main purpose and need not be expressed in the title. The pronouncements of this court are legion to the effect that the provisions in the body of a law, which are germane to the object of the legislation need not be expressed in the title and that the title is not required to be a complete index to every section of the statute. It is sufficient if the title in general terms directs attention to the purpose of the enactment. A few of the recent cases on this point are Peoples Homestead Saving Ass'n v. Masling, 185 La. 800,171 So. 36; State v. Martin, 192 La. 704, 189 So. 109; Jackson v. Hart, 192 La. 1068, 190 So. 220; Wm. M. Barret, Inc., v. First National Bank of Shreveport, 191 La. 945, *Page 102 186 So. 741, and Airey et al. v. Tugwell, 197 La. 982, 3 So.2d 99.
The next objection of the plaintiff is that there is nothing in the title of the Act which indicates or gives notice that the Police Juries of the parishes adopting voting machines will be bound to pay one-half of the cost of such machines or that the City of New Orleans is bound to pay one-half of the cost of the machines installed in that City. This point is fully answered by what we have said concerning plaintiff's objections with regard to the cost and maintenance of the voting machines and the authorities above cited are controlling. It is manifest that the Legislature, in providing for the use of voting machines in elections, had the right to require that a part of the costs attendant to the purchase be paid by the parishes in which they were to be put in use. Such provisions are cognate to the principal aim of the legislation and need not be expressed in the title.
The next complaint of the plaintiff is that the provisions of the title of the Act, which make "the use of said machines mandatory in certain cases" and provide for "the optional use thereof in others" do not sufficiently describe the object of the statute in making voting machines mandatory in the City of New Orleans and optional in all other parishes. We cannot agree with this contention. The provision in the title is sufficient notice to anyone reading it that the body of the Act must be examined in order to ascertain the places where the use of the *Page 103 
machines is made mandatory or where it is optional.
Plaintiff further complains that the proviso contained in the title of the Act that the adoption and use of voting machines is dependent upon the passage of a proper constitutional amendment does not adequately indicate the object of Section 20 of the Act which provides that the statute shall not take effect and become operative until the ratification and adoption of the proposed constitutional amendments embraced in Acts 372 and 375 of 1940. We see no merit whatever in this contention for the reason that the title of the law clearly indicates that its operation and effect is dependent upon the passage of a constitutional amendment.
Plaintiff also proclaims that Act 84 discloses two objects in that it provides for the use of voting machines in both primary and general elections. It is argued that heretofore primary and general elections have been treated as separate and distinct subjects by the Legislature and that, therefore, the Legislature may not enact in one statute legislation which applies to both kinds of elections. The point is not tenable. The subject matter of the law dealt with in Act 84 is that of elections, primary and general. The object of the law is to provide for the use of voting machines (or a new method of voting) in those elections. There is but one object sought to be accomplished and there is no reason, constitutional or otherwise, why the Legislature should have passed a voting machine law for primary elections and another law for general *Page 104 
elections. The method of voting applies equally to each type of election.
For the reasons above stated, we hold that Act 84 of 1940 does not violate the provisions of Section 16 of Article 3 of the Constitution.
The second constitutional objection urged by the plaintiff is that Act 84 of 1940 is arbitrary and discriminatory and that it denies to him the equal protection of the laws in violation of the Fourteenth Amendment of the Constitution of the United States. This contention is based upon the premise that, since the Act makes the use of voting machines mandatory in the City of New Orleans and optional as to other parts of the State, he, as a resident and taxpayer of a parish in which the use of such machines has not been made mandatory, may be deprived of casting his vote by the method provided for. He argues that there is no reasonable basis for the classification made in Act 84 with respect to the City of New Orleans; that this provision is discriminatory and that, under the well-settled jurisprudence of the United States, he is being denied the equal protection of the laws.
This proposition cannot be maintained. The legislation here involved neither deprives the plaintiff and others similarly situated of their right of suffrage nor does it preclude them from using voting machines. Conversely, it authorizes such use and grants to plaintiff and the people of his parish the privilege of determining by an election called for that purpose, whether they desire to adopt the method of *Page 105 
voting prescribed in the Act. If any group is being discriminated against by the statute, it is not the plaintiff or his fellow-parishioners but the people of the City of New Orleans who are compelled, under the law, to use voting machines in conducting their elections.
Moreover, even if we assume that the plaintiff has a ground for complaint against the legislative exaction that the use of voting machines in New Orleans shall be mandatory, we cannot discern how that provision denies him the equal protection of the laws. The City of New Orleans, from the date of its incorporation, has been the subject of special treatment by the Legislature and there are hundreds of instances where that City has been particularly excepted from the provisions of laws which apply generally to other subdivisions of the State. There are also many laws passed by the Legislature each biennium which apply to the City of New Orleans only. It is the established jurisprudence of the Supreme Court of the United States that particular classifications in laws based upon population are not, of themselves, invalid and do not impinge upon the constitutional guarantees set forth in the Fourteenth Amendment. See Bowman v. Lewis, 101 U.S. 22, 25 L.Ed. 989, and Mason v. Missouri, 179 U.S. 328, 21 S.Ct. 125, 128, 45 L.Ed. 214. In the last cited case, which was an action to have a special registration law of the State of Missouri, which was made applicable to the City of St. Louis only, declared unconstitutional as an unreasonable discrimination and a denial of the equal protection of the laws, the court, through *Page 106 
Mr. Chief Justice White, said: "* * * the circumstance that the registration law in force in the city of St. Louis was made to differ in essential particulars from that which regulates the conduct of elections in other cities in the state of Missouri does not in itself deny to the citizens of St. Louis the equal protection of the laws. Nor did the exercise by the general assembly of Missouri of the discretion vested in it by law give rise to a violation of the 14th Amendment to the Constitution of the United States. * * *"
However, counsel for plaintiff, while recognizing that, as a general rule, constitutional guarantees do not forbid special treatment and classification in laws based upon population, assert that such classification must always rest upon some difference which bears a reasonable and just relation to the Act in respect to which the classification is proposed and that it can never be arbitrary and without such basis. And it is contended that the provision in the law under consideration which authorizes the people of other parishes, excepting the Parish of Orleans, to adopt voting machines at their option is but a mere pretext and that the effect of the law is to enforce the use of voting machines in the City of New Orleans only.
We cannot coincide with this line of reasoning for it is not the function of this court to charge the Legislature with making arbitrary and discriminatory classifications in the absence of clear manifestation that such was the case. On the contrary, in adopting the instant legislation *Page 107 
there may have been many salutary reasons for requiring the use of voting machines in the City of New Orleans with its large population and making such use optional in the more sparsely settled communities.
The third constitutional objection made by the plaintiff is that Act 84 of 1940 is, in truth, a special or local law dealing with elections in the City of New Orleans and that it is, therefore, violative of Section 4 of Article 4 of the Constitution which prohibits the Legislature from passing local or special laws respecting the holding and conducting of elections or fixing or changing the place of voting. The argument on this point is based upon the premise that the mandatory provision, relating to the use of voting machines in New Orleans, must be viewed as a special law affecting that city alone and that the other general provisions, which grant to the other parishes of the State the option of determining whether they will adopt the voting machines or not, cannot and should not be regarded as changing the special character of the enactment. In support of this point, much reliance is placed upon the decision in Federal Land Bank v. John D. Nix, Jr., Enterprises,166 La. 566, 117 So. 720.
In the Nix case, this court was called upon to decide whether Act 76 of 1910, which authorized municipalities of over 100,000 inhabitants to adopt ordinances regulating the construction and removal of buildings, was a special or local law within the meaning of the constitutional prohibition that no such law shall be passed *Page 108 
by the Legislature without previous publication of notice of intention. We found that the provision that the statute was to apply to municipalities of over 100,000 inhabitants plainly indicated that the operation and effect of the law would be confined solely to the City of New Orleans since that city was the only municipality in this State which had a population anywhere near that number of inhabitants. Accordingly, it was declared that the statute was local or special in character.
An examination of the enactment under consideration amply demonstrates that it does not fall within the category of the statute reviewed in the Nix case. There, the Act applied solely to the City of New Orleans and could not have effect in other cities of the State. But, here, the law operates generally throughout the entire state, for, it authorizes the use of voting machines in all elections. The mere fact that, as to the City of New Orleans, the use of such machines is made mandatory cannot be regarded as having the effect of changing the general and all-embracing character of the legislation. Of course, the provision respecting the City of New Orleans is a special one but it is not unusual or objectionable to have special provisions included in general statutes. These provisions do not affect the general purpose of the law or violate Section 4 of Article 4 of the Constitution.
The next point raised by the plaintiff is that Act 84 of 1940 has not been ratified by "proper constitutional amendment" and that it is, therefore, not validly in effect. This proposition is founded on the theory *Page 109 
that the Legislature, in proposing amendments to Sections 7 and 15 of Article 8 of the Constitution, did not undertake to amend the appropriate section of Article 8 of the Constitution with respect to primary elections and that, this being so, the entire enabling act (84 of 1940) is invalid and without effect since the title of that Act contains the proviso that the law shall not be operative unless "the adoption and use of voting machines is authorized by proper constitutional amendment." Counsel for the plaintiff argue that Sections 7 and 15 of Article 8 of the Constitution, which have been amended by Acts 372 and 375 of 1940, apply exclusively to general elections and not to party primaries. And pointing to the language of Section 7 of Article 8 which declares that "in all elections by the people the electors shall vote by ballot * * *", they say that a party primary cannot be held to be included therein since a primary is not an election but a nomination of candidates to enter as representatives of a political party in elections by the people. Then, too, it is insisted that, forasmuch as primary elections are particularly provided for in Section 4 of Article 8 of the Constitution, the provisions of Sections 7 and 15 of the same Article can have no application to primary elections. Moreover, counsel maintain that it is well-established that the terms "election" and "elections by the people" do not include primary elections. 14 Words and Phrases, Perm.Ed., p. 167, and authorities from a number of common law states are cited in support of the contention.
On the other hand, counsel for the defendants submit that primaries in Louisiana *Page 110 
are regarded as elections and that the Constitution treats them as such. To sustain this conclusion, they direct our attention to the recent decision of the Supreme Court of the United States in United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, wherein it was held that a Louisiana primary was an election within the meaning of the terms of Section 4, Article 1 of the United States Constitution. They also cite a number of cases from other States which hold that a party primary is to be considered as an election.
We do not regard the authorities submitted by either of the opposing counsel as controlling in determining whether the term "elections by the people", as used in our Constitution, includes party primaries. The answer to this question can, we believe, be found by a consideration of the interrelated provisions embraced in Article 8 of the Constitution, which deals exclusively with the subject matter of suffrage and elections, with a view of discerning the true intention of the Constitutional Convention in its use of the term "elections by the people."
Preliminarily, it is significant to note that Article 8, which, as we have said, deals with the subject of suffrage and elections, makes provision in Section 4 thereof for the enactment of laws by the Legislature to secure fairness "in party primary elections". And Section 15 of the Article provides that "all elections by the people, except primary elections * * * shall be by official ballot * * *." This section relates solely to general elections since primary *Page 111 
elections are specifically excluded from its provisions. Therefore, it is reasonable to conclude that the framers of the Constitution, in using the term "in all elections by the people" in Section 7 of the Article, without any qualification, evidenced that it was their intention to include therein all elections, primary or otherwise.
It is argued on behalf of the plaintiff that this interpretation is not justified because Sections 7 and 15 of the Constitution of 1921 are identical with the corresponding sections of the Constitutions of 1898 and 1913 (203, 212) and that, prior to 1900, there was no primary election law in the State. This contention does not impress us. While it is true that the first primary election law was not passed by the Legislature until the year 1900, the framers of the Constitution of 1898 plainly contemplated that such a law would be enacted, for, by Article 215 of that Constitution, the Legislature was commanded to provide laws to secure fairness in party primary elections, and under Article 212 (which corresponds to Section 15 of Article 8 of the Constitution of 1921) primary elections were specifically excepted from its provisions.
Furthermore, if it should be assumed that there is doubt as to whether "elections by the people" as used in Section 7 of Article 8 of the Constitution includes primary elections, we cannot see that it follows, as a necessary result, that Act 84 of 1940 would be invalid or ineffective. Section 20 of the Act declares that it shall take effect and become operative upon the approval of the *Page 112 
constitutional amendments proposed by Acts 372 and 375 of 1940. When these amendments were adopted by the people, the Act went into full force and effect. The argument that the Act did not become operative because the title of the law provides that it is dependent upon the passage of a "proper constitutional amendment" is fallacious. The "proper constitutional amendment" obviously means appropriate or necessary amendment. The only provisions of the Constitution which relate to the method of voting in elections are Sections 7 and 15 of Article 8. If primary elections are not included in Section 7, there is no constitutional restriction with regard to the method of voting in primary elections and the Legislature had full authority to provide a proper and effective method.
It is further argued that Section 4 of Article 8, which declares that the Legislature shall pass laws to secure fairness in party primary elections, should have been amended so as to make Act 84 effective as to primaries. The mere statement of this proposition is its own refutation, for, as we have said, Section 4 does not restrict the power of the Legislature to provide for methods of voting in party primary elections.
The plaintiff also attacks the constitutionality of Act 84 of 1940 on the ground that the provision making the use of voting machines mandatory in primary elections in the Parish of Orleans and optional as to all other parishes violates Section 4 of Article 8 of the Constitution which provides in part as follows: *Page 113 
"The Legislature shall enact laws to secure fairness in party primary elections, conventions, or other methods of naming party candidates."
Counsel for plaintiff postulate that when the Legislature of 1940 enacted Act 84, it plainly evidenced its belief that the only way to insure honesty and fairness in party primary elections was to require the electors to use voting machines. Hence, they maintain that, since the use of these machines is made mandatory for the City of New Orleans only and optional in other parishes, the law does not secure equality and fairness in party primary elections throughout the State and therefore violates the above quoted constitutional provision. The case of State ex rel. Ward v. Board of Supervisors of Elections,186 La. 949, 173 So. 726, is relied upon to sustain this proposition.
The contention is not well-founded. The Legislature, in enacting Act 84 of 1940, has not indicated that it is of the belief that primary elections may not be fairly conducted without the use of voting machines and there is nothing in the Constitution, law or jurisprudence which would justify a conclusion that the use of the Australian ballot is not a fair method by which votes in a primary election may be cast. On the contrary, Sections 7 and 15 of Article 8 of the Constitution specifically provide for voting by ballot in all elections and the amendments to these sections merely permit the use of voting machines. It is true, of course, that Act 84 of 1940 unquestionably reveals that the Legislature was convinced that voting machines provide a *Page 114 
modern, accurate and effective method by which votes are cast and counted, and that they are highly desirable. But this does not mean that the Australian ballot does not fulfill the requirements of Section 4 of Article 8 of the Constitution. That method of balloting is not only sanctioned by Sections 7 and 15 of Article 8 of the Constitution, but it is the principal method provided therein for use in all elections. In view of this, it would be presumptuous indeed for this Court to condemn that method and hold that it does not insure fairness in primary elections.
The decision in State ex rel. Ward v. Board of Supervisors of Elections, supra, is without pertinence here. The statute there involved had the effect of depriving candidates of the right of obtaining representation at the polls and, as a consequence, did not secure the fairness in primary elections which is contemplated by Section 4 of Article 8 of the Constitution.
Plaintiff assails Section 19 of Act 84 of 1940 claiming that it violates Sections 1, 9 and 10 of Article 4 of the Constitution in a number of respects. We shall endeavor to discuss his complaints separately.
By Section 19 of the Act a State Board to purchase voting machines was constituted with "full authority and discretion to select such type or types of machine as will comply with the specifications herein provided, taking into consideration the efficiency of such machine to obtain the best results, price, terms of sale, guarantees of maintenance and other material considerations." It is further provided that, in all cases, the costs and expenses incident to *Page 115 
the purchase, maintenance, etc., of the machines shall be divided as follows:
"One-half (1/2) thereof by the State of Louisiana out of the General Fund; the other half (1/2) by each of said parishes; except in the city of New Orleans, in which case one-half (1/2) of said costs and expenses shall be paid by the State out of the General Fund and the other half (1/2) shall be provided for by the Commission Council of said City."
It will be observed from the foregoing that the Board to Purchase Voting Machines is given the necessary power to acquire the machines and that no restriction is placed upon it with respect to the cost price, one-half of which is to be paid by the State out of the General Fund. However, it is to be noted that the Legislature by Act 44 of 1940 (the General Appropriation Act), appropriated from the General Fund a total sum of only $123,000 for the biennium 1940-42 to pay for the State's share of the cost of rental, lease or purchase of voting machines.
The bid of the intervenor, Shoup Voting Machine Corporation, for furnishing 435 voting machines for use in New Orleans, is $494,160 cash. This bid has been accepted by the Board to Purchase Voting Machines. The State's share of the cost price is $247,080 but at the present time there is only $123,000 available (specially appropriated out of the General Fund) to the Board for use in payment to the seller.
Section 1 of Article 4 of the Constitution provides that "No money shall be drawn from the treasury except in pursuance of *Page 116 
specific appropriation made by law; * * *". The plaintiff claims that Section 19 of Act 84 violates this constitutional provision because that section purports to vest authority in the State Board to pay the State's one-half share of the cost of voting machines out of the General Fund without any specific appropriation being made by law.
Contra, the defendants, Board to Purchase Voting Machines, the State Treasurer and State Auditor and the intervenor assert that, while the Legislature would not ordinarily have the power to provide for disbursements out of the General Fund without specific appropriation, the situation with respect to Act 84 is different for the reason that the enactment is not an ordinary legislative Act, but that it has become part of the Constitution by virtue of the adoption of the constitutional amendments proposed in Acts 372 and 375 of 1940, which amended and modified Sections 7 and 15 of Article 8. Counsel for these defendants and the intervenor, in stressing the soundness of this contention, direct our attention to the last sentences of these amendments (which are substantially the same) reading as follows:
"Any legislation adopted at the Regular Session of the Legislature of 1940, based upon this proposed amendment, shall be validated and ratified by the adoption of this amendment."
We cannot subscribe to the proposition that a constitutional amendment validating and ratifying particular legislation can be considered as having the effect of making the legislative act a part of the *Page 117 
Constitution. In the first place, the terms "ratify", "approve" or "validate" are not the equivalent of the terms "to make part of" or "to incorporate into". See State v. Kohnke, 109 La. 838, 33 So. 793. All valid enactments of the Legislature may be said to be approved or ratified. They are ratified or approved by anticipation but they do not on that account become part of the organic law. Where a law passed by the Legislature is made dependent upon the adoption of a constitutional amendment and such amendment is afterwards approved by the people, the statute becomes operative from the date the proposed amendment has been approved. See Section 2 of Article 21 of the Constitution. Hence, the only benefit which may be derived by having the people actually validate and ratify the legislation in the proposed amendment is to give to the law a retrospective approval, that is to say that the law which has been ratified will become operative and have effect from the date of its passage rather than from the date upon which the constitutional amendment receives approval. See State v. Kohnke, supra.
However, counsel for the defendants and the intervenor, in urging us to hold that Act 84 of 1940 has become part of the Constitution, rely heavily upon the case of Fontenot v. Young,128 La. 20, 54 So. 408, 411, as authority for the contention made. An examination of the cited case reveals that, while the opinion states that Act 15 of 1910 "practically" became part of the Constitution since it had been specially ratified and confirmed by constitutional amendment, it is clearly distinguishable from the case *Page 118 
at bar. In that matter, the Legislature, acting in pursuance of the power vested in it by Articles 277 and 280 of the Constitution of 1898, enacted a statute creating the Parish of Evangeline. There was, therefore, no necessity for a constitutional amendment for the approval of the legislation. However, the Legislature of 1910 did propose amendments to Articles 18, 107 and 108 of the Constitution in which (among other things) it sought to have the statute ratified and confirmed. These amendments were duly adopted by the people. Certain taxpayers thereafter attacked the Act creating the new parish and the court, in rejecting their demands, stated that the ratification and confirmation of the statute by the people had the effect of incorporating, for practical purposes, the legislation into the Constitution. Notwithstanding this, the court undertook to discuss all of the constitutional objections leveled at the legislation by the plaintiffs.
In view of this court's prior decision in State v. Kohnke, supra (which, incidentally, is neither cited nor discussed in the Fontenot case), we cannot believe that the court in the Fontenot case intended to go so far as to endorse the contention of the defendants that the mere approval and ratification of legislation by a constitutional amendment incorporates such legislation into the Constitution. We think that it is more reasonable to say that the court, being confronted with legislation which had for its purpose the creation of a new parish or subdivision of the State, felt that, for all practical purposes, the legislation had the effect of enlarging the organic law with respect to the number of parishes of the *Page 119 
State and the number of members of the House of Representatives in the Legislature. In this connection, it should be noted that the opinion in the Fontenot case does not say that the confirmation and ratification of the legislation by the people embodied the statute into the Constitution as a part thereof but that it declares that "And they saw fit to propose and adopt an amendment which practically incorporates in the Constitution the Act No. 15 of 1910." (Italics ours.)
At all events, this court is not prepared to hold that the mere validation and ratification of a legislative act by constitutional amendment incorporates the law into the Constitution. Our view is that it can be considered only as giving the law, which is so approved, retroactive effect so that it becomes operative from the date of its passage.
While we do not subscribe to the contention of the defendants and the intervenor for the reasons above stated, we are unable to coincide with the proposition advanced by the plaintiff that Section 19 of Act 84 violates Section 1 of Article 4 of the Constitution because that section purports to grant to the State Board to Purchase Voting Machines the authority to pay the State's one-half share of the cost of the machines without any specific appropriation being made by law. It is our opinion that Section 19 vests in the State Board full authority to purchase all voting machines necessary for use in elections to be held throughout the State. Of course, payment for purchases so made cannot be taken out of the General Fund without the *Page 120 
Legislature specifically appropriating, as prescribed by Section 1 of Article 4 of the Constitution, monies to defray the State's portion of the purchase price and the State Treasurer and Auditor have no right to make any such payments. But this constitutional prohibition does not in any way restrict or destroy the power of the State Board to make contracts for the purchase of the machines. It appears in this case, however, that the State's share of the purchase price for the voting machines ordered from the intervenor, Shoup Voting Machine Corporation, is $247,080 cash and that the Legislature has only specially appropriated $123,000 for the biennium of 1940-42 which is available at the present time to be used as a partial payment in cash to the intervenor. The intervenor, of course, has the right to refuse to deliver the voting machines ordered by the State Board until provision is made for payment of the full purchase price in cash in accordance with the terms of its bid. But the intervenor is not insisting upon full payment in cash and it states in its intervention that it is willing to deliver the machines upon payment of the $123,000 already specially appropriated and wait until further legislative action for payment of the balance. We can see no objection to this. The intervenor realizes that there is no legal obligation which can be enforced against the State for the balance which will become due upon the delivery of the machines and that, if the Legislature refused to make the necessary appropriation, it would have no recourse whatsoever. This is a matter entirely between the Legislature and the intervenor and does not affect *Page 121 
the authority vested in the Board to make the purchase.
Plaintiff also asserts that no part of the $123,000 specially appropriated by Item 72 of Act 44 of 1940 should be paid by the State Treasurer to the intervenor because that appropriation reads "State's share of cost of rental, lease or purchase of voting machines" whereas Section 19 of Act 84 and the Constitutional amendments provide only for the purchase of voting machines. This proposition is patently without merit because the State Board is not attempting to rent or lease the voting machines but is purchasing them in accordance with the authority vested in it by Section 19.
Counsel for plaintiff further say that the appropriation of $123,000 in Item 72 of Act 44 of 1940 should be declared invalid because the purchase of voting machines is not an ordinary expense of the government whereas Section 9 of Article 4 of the Constitution declares that "The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the government, * * *". This point is not well-taken for the reason that the expense necessary for the holding and conducting of elections is clearly an ordinary governmental outlay and has never, so far as we are able to ascertain, been regarded as otherwise.
But counsel persist that, at the time Item 72 was placed in the general appropriation bill, the use of voting machines was not permitted in Louisiana and, therefore, appropriations of monies for the purchase of such machines could not be *Page 122 
considered as an ordinary expense. The answer to this contention is found in Section 2 of Article 21 of the Constitution which declares that the Legislature, in submitting amendments to the Constitution, may at the same session pass laws to carry such amendments into effect. Certainly, the validity of the appropriation in Item 72 of the Act was dependent upon the approval by the people of the constitutional amendments authorizing the use of voting machines, and, if the people had not approved such use, the appropriation would have lapsed.
Plaintiff also attacks Item 72 of Act 44 of 1940 on the ground that it violates Section 10 of Article 4 of the Constitution providing that "Each appropriation shall be for a specific purpose, and for a specific amount, * * *". This contention is based upon the premise that, since the appropriation made under Item 72 is for the rental, lease or purchase of voting machines, it is not for a specific purpose. There is no substance in the point because the amount appropriated is for the specific purpose of installing voting machines in parishes where the same are placed in use. Furthermore, by Section 19 of Act 84, the authority of the State Board to Purchase Voting Machines is limited to the purchase thereof.
Counsel for plaintiff further say that, since Sections 7 and 15 of Article 8 of the Constitution as amended do not authorize any legislation providing for the payment by local subdivisions of the State of any part of the cost of purchasing, maintaining, etc., voting machines acquired under *Page 123 
the authority of their provisions, it follows that Section 19 of Act 84 is unconstitutional in so far as it attempts to impose this obligation upon the City of New Orleans or any of the parishes where voting machines are placed in use. This point is not well taken because the Legislature is authorized by the constitutional amendments to provide for balloting by use of voting machines throughout the State or in one or more parishes or cities of the State. The authority granted necessarily includes the power to pass laws providing for the payment of the cost of the machines so acquired and to impose upon the subdivisions of the State where voting machines are placed in use their just proportion of such cost.
Finally, it is claimed by the plaintiff that the City of New Orleans is without authority to provide funds for payment of its one-half share of the purchase price of the voting machines acquired by the State Board under authority of Section 19 of Act 84 for the reason that said City has no money in its treasury which has not been otherwise appropriated, has made no appropriation therefor in its budget and cannot lawfully contract therefor without violating Section 12 of Act 4 of 1916 which was continued in effect by Section 24 of Article 14 of the Constitution. We cannot see what interest the plaintiff has in raising this question. He is neither a taxpayer nor a resident of the City of New Orleans and has no right whatever to complain as to any action that city might take in complying with the obligation imposed upon *Page 124 
it by Section 19 of Act 84 of 1940. The City of New Orleans is not complaining. On the contrary, as a defendant in this litigation, it has come into court upholding the constitutionality of Act 84 and, in recognition of its obligation to pay its share of the costs of the voting machines, not only has it turned over to the State the sum of $25,000 on account but the Commission Council has passed resolutions indicating that it will provide for the balance in its budget for 1942. Surely, since plaintiff is not a taxpayer of the City of New Orleans, he has no cause to complain respecting the action taken by the Commission Council in carrying out what it conceives to be an obligation imposed upon the City by the statute.
After a full and careful consideration of Act 84 of 1940, we are of the opinion that the statute is valid and constitutional in all respects. The district judge erred in resolving otherwise.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that plaintiff's suit be dismissed at his cost.
O'NIELL, C.J., concurs in the decree, with the understanding that, as the sale of the voting machines to the State will be a valid contract, so will the State's obligation to pay the balance of the price be a valid obligation, for the payment of which the Legislature hereafter will have to make the necessary appropriation in order to avoid an impairment of the good faith and credit of the State. *Page 125