(130 So. 46)

STATE ex rel. CITY OF NEW ORLEANS et al. v. LOUISIANA TAX COMMISSION.
No. 30831.

Aug. 8, 1930.

Percy Saint, Atty. Gen., and L. H. Perez, of New Orleans, and Leslie A. Fitch, of Baton Rouge, for appellant.

Michel Provosty, City Atty., Henry B. Curtis, Asst. City Atty., J. C. Henriques, for Board of Liquidation, City Debt, William C. Dufour, for Board of Assessors for the Parish of Orleans, Gustave Llambias, for the Sewerage and Water Board of New Orleans, all of New Orleans (Nat D. Cooke, of New Orleans, of counsel), for appellees.

O'NIELL, C. J.

The Louisiana tax commission appeals from a judgment rendered in a mandamus proceeding, ordering the tax commission to approve and return to the board of assessors for the Parish of Orleans the tax rolls of this year. The rolls, consisting of the tentative assessments made by the board of assessors, were delivered by the board to the tax commission on the 21st of April, to allow the commission to review the assessments and to approve and return them, after making such changes of valuation as the commission might see fit to make. According to section 2 of article 10 of the Constitution 1921, and the first and second paragraph of section 10 of Act No. 140 of 1916, as amended by section 1 of Act No. 211 of 1918, the Louisiana tax commission has the authority to fix and equalize the assessments or valuations of property for the

purpose of collecting state taxes; and the local assessing authorities must adopt the assessments or valuations fixed by the tax commission, or a percentage thereof, not below 25 per cent., for the collection of municipal, parochial, or other local taxes. The method by which the assessments are made for the collection of all taxes, state and local, is that the assessor in each parish throughout the state, and the board of Assessors for the parish of Orleans, prepares a tentative assessment roll, which, after being reviewed and revised by the parish board of equalization, according to the provisions of Act No. 231 of 1920, is submitted to the tax commission for approval. The tax commission may make such changes in the valuations as the commission sees fit before approving the rolls; and, when they have been thus approved by the tax commission they become the assessments for the collection of state taxes, and form the basis on which the percentage (not below 25 per cent.) must be adopted for the collection of municipal and parochial and other local taxes.

By Act No. 10 of 1920 it is made the duty of the board of assessors for the parish of Orleans to begin the preparation of the assessments of real estate on the 1st day of November, each year, and to complete the work on or before the 31st of January of the year for which the assessment rolls are made. Commencing on the 1st of February, the board is required to publish for fifteen consecutive days a notice to the taxpayers that the assessments are completed and will be exposed in the office of the board for inspection and correction before the revision committee of the commission council, or parish board of equalization, during the period of publication and for ten days thereafter. It is contemplated, therefore, that the assessments of real estate in New Orleans shall be completed,

as far as the work of the board of assessors and of the parish board of equalization goes, and be ready for submission to the tax commission, on or about the 25th of February in the year for which the assessments are made. The second section of Act No. 10 of 1920 requires that the assessment of personal property in New Orleans shall be completed by the board of assessors in time to have the rolls exposed for inspection and correction during such period as the tax commission may prescribe, but, "in any event," says the statute, within such time as will permit the committee of the commission council to conclude its work of review on or before the 30th of June of the year for which the assessment roll is made.

Section 37 of the City Charter, being Act No. 159 of 1912, as amended by Act No. 115 of 1921 (Ex. Sess.), p. 255, declares that the taxes levied by the commission council of New Orleans shall be due and payable from the 1st day of June until the 1st day of August, inclusive, under such regulations as the commission council may establish, and that at the expiration of the 1st day of August the taxes shall become delinquent and the taxpayer become subject to the penalty of 10 per cent. interest per annum.

It is plain, therefore, that the law requires the tax commission to complete its work of reviewing the New Orleans assessments, and changing such valuations as the commission may see fit to change, within such time as to have the completed and approved rolls of the real estate assessments in the hands of the tax collector on the 1st day of June, each year, and surely within such time as to have all of the assessment rolls in the hands of the tax collector on as early a date as possible before the taxes can become delinquent. And the Act No. 10 of 1920 allows the tax commission ample time for the performance of its duty in that respect.

This suit was filed on the 17th of June, because the tax commission had not yet complied with the demand of the city that the commission conclude its work of reviewing and revising the assessments, and to approve and return the assessment rolls. The Tax Commission had returned to the board of assessors the assessment rolls for five of the seven municipal districts, but had not formally approved the assessments, and refused to approve or return the rolls for the two other districts.

■■ In defense of the suit, the tax commission pleaded, first, that the court had not jurisdiction over the subject-matter, and that the city had no right or cause of action, because the tax commission has exclusive authority in the matter of fixing and equalizing assessments or valuations of property for the collection of state taxes, and the parishes and municipalities must adopt the assessments or valuations fixed by the tax commission, or a percentage thereof, not below 25 per cent., for the collection of parochial or municipal or other local taxes, and because the tax commission had not completed its work of fixing and equalizing the assessments or valuations for the collection of state taxes. The plea to the jurisdiction of the court and the exception of no cause or right of action were overruled by the decree of the district court, and are urged again in this court. It is a begging of the question to say that the court is without jurisdiction, or that the city of New Orleans is without a cause or right of action to compel the tax commission to perform its duty of reviewing and revising the tentative assessments made by the board of assessors, until the tax commission has performed its duty of fixing and equalizing the assessments or valuations for the collection of state taxes. The only method by which the tax commission fixes and equalizes the assessments or

valuations for the collection of state taxes is by reviewing, and revising, if deemed necessary, the tentative assessments made by the board of assessors for the parish of Orleans and by the assessors for the other parishes throughout the state. And that is the very duty which the city of New Orleans is now attempting by this suit to compel the tax commission to perform. There is therefore no merit in the tax commission's plea to the jurisdiction, or exception of no cause or right of action.

■■ The tax commission pleaded, in its answer to the suit, that Act No. 10 of 1920 and section 37 of the charter of the city of New Orleans were unconstitutional, for several reasons alleged in the answer. The statutes referred to are the laws which, by necessary implication, require the tax commission to conclude its work of reviewing, and revising, if deemed necessary, the real estate assessments before the 1st day of June each year, and to approve and return all of the assessments to the board of assessors in New Orleans on as early a date as possible before the taxes can become delinquent. The first complaint in that respect is that these statutes, being local and special laws, were enacted without previous publication of the intention to have the laws enacted, as required by section 6 of article 4 of the Constitution 1921. It has been decided repeatedly by this court that, in the enactment of a local law which, either in terms or in effect, amends a municipal charter, it is not necessary that a notice should be first published of the intention to have the law enacted; and, whatever may be said of the correctness of the doctrine of those decisions, as an original proposition, it has been repeated so often that it must be presumed to have been approved and acted upon by the legislative department, so that we are constrained to adhere to it. See State

ex rel. Fortier v. Capdevielle, 104 La. 561, 29 So. 215; Mulhaupt v. Shreveport, 126 La. 780, 52 So. 1023; State v. Landry, 139 La. 451, 71 So. 763; and Federal Land Bank v. Nix Enterprises, 166 La. 566, 117 So. 720.

The second complaint regarding the constitutionality of section 37 of the City Charter and of Act No. 10 of 1920 is that the imposing of the penalty of 10 per cent. interest is not authorized by section 11 of article 10 of the Constitution 1921, and that the Legislature could not fix a date of delinquency of municipal taxes, or prescribe the time for making assessments for the collection of municipal taxes, different from the date or time prescribed by the Constitution. The answer to that contention is, first, that the provisions of the Constitution in that respect are not applicable to municipal taxes; and, second, that the Constitution, in providing that property shall not be advertised for sale for delinquent taxes until the end of the year, does not fix or prescribe the date of delinquency, but leaves the matter of prescribing the date of delinquency and the penalties therefor to the Legislature. See Victoria Lumber Co. v. Rives, 115 La. 996, 40 So. 382, and Paepcke Leicht Lumber Co. v. Vantrompt, 137 La. 743, 69 So. 159.

The third and last complaint regarding the constitutionality of section 37 of the City Charter, Act No. 159 of 1912, as amended by Act No. 115 of 1921, is that, inasmuch as Act No. 159 of 1912 was submitted to the electors of the city for their approval, no amendment thereof could be adopted without being also submitted to the electors for their approval. We do not find any merit in the complaint, as an abstract proposition; besides which, the provisions of section 37 of the City Charter fixing the date for the collection and date of delinquency of municipal taxes were contained not only in the amendment made by Act No. 115 of 1921 (Ex. Sess.) but also in section 37 as originally enacted.

The tax commission contends also, assuming for the sake of argument that Act No. 10 of 1920 was valid legislation, that the provisions of the act relating to the time for making and completing the tax assessments in New Orleans were superseded by the provisions of section 10 of Act No. 231 of 1920, declaring that the parish boards of equalization throughout the state shall commence their work on the first Monday in May, each year. Act No. 231 of 1920 is a general law providing for the creation of parish boards of equalization throughout the state, and prescribing their duties, etc. Some of the sections of the act are applicable to the Parish of Orleans only, others are applicable to the other parishes only, and other sections are applicable to the Parish of Orleans as well as to the other parishes. The language of section 10 shows plainly that it is not applicable to the parish of Orleans, because it does not refer to the board of assessors, but refers only to the assessor, in referring to the authority making the assessment. In the parish of Orleans the authority for making assessments is the board of assessors, and in each of the other parishes there is only one assessor. Besides, section 10 of Act No. 231 of 1920 is a general law; and Act No. 10 of that year is a special or local law, applicable to the parish of Orleans only. Local or special laws are not repealed by implication by general laws relating to the same subject-matter. It would be unreasonable to assume that the Legislature intended that Act No. 231 of 1920 should apply to the parish of Orleans and thereby annul the provisions of the special law enacted exclusively for the parish of Orleans, at the same session of the Legislature, and only a few days before the passage of Act No. 231.

■ With regard to the merits of the case, the tax commission contends that the tentative assessments which were submitted to the tax commission by the board of assessors for approval are not such assessment rolls as the law requires the board to submit to the commission for approval. It is true that these tentative assessments were not made on new assessment sheets, as the law perhaps contemplates. They were made by inserting in the three blank columns, headed, respectively, "Actual Value of Exempt Lands," "Actual Value of Exempt Improvements," and "Actual Value of Exempt Lands and Improvements," on the old rolls for 1929, the tentative values fixed by the board of assessors and approved by the parish board of equalization for the assessments for 1930. In some instances the printed headings, above the columns, were stricken out by the Board of Assessors and appropriate headings were substituted by means of a rubber stamp; but in many instances the board of assessors neglected to correct the printed headings above the columns containing the tentative assessments for 1930. The chairman of the tax commission admitted, however, as a witness on the trial of the case, that he understood what the figures represented and that no one was deceived at all by the printed headings above the columns of figures. The tax commission accepted the tentative assessments in that form, as the commission had done consistently for many years before; and, in April, 1930, the commission published a notice in the New Orleans newspapers, informing the taxpayers that the commission would meet in New Orleans for a period of ten days beginning on the 21st of April, "for the purpose of reviewing valuations made by the local authorities on real estate and improvements and fixing the actual cash value thereof for state purposes for the current year."

There is no doubt that the tax commission hereafter may require the board of assessors to submit the tentative assessments on new forms, to be furnished or prescribed by the tax commission; and it may be conceded that the form in which these tentative assessments were submitted and accepted heretofore is not what the law requires or contemplates; but the complaint of the tax commission in that respect came too late, as far as the assessments for this year are concerned, after the time had passed in which the tax commission should have completed its work of reviewing and revising and finally approving the assessments for this year.

It appears that the board of assessors, according to its established custom, does not make out the final and completed rolls which are delivered to the tax collectors until the tax commission has approved and returned the tentative assessments made and submitted by the board of assessors. The tax commission complains now of this method, and insists that it should be changed, and that the commission cannot be required to approve the assessments until the final rolls have been made by the board of assessors. on the new forms furnished by the commission, so as to show that the board of assessors has made such changes of valuations as the commission has ordered. We are not convinced that the method heretofore pursued is wrong, except in the matter of using the old assessment rolls, and the columns bearing wrong captions, in making out the tentative assessments. But, if the method is to be changed by an order of the tax commission, it must be done only for the assessments of future years, and not for the assessments of this year, or without due notice to the board of assessors.

■ It is contended, finally, by the tax commission that the proceeding by manda-

mus is not appropriate to the facts of this case because of the unlimited discretion which the tax commission has, under the law, in the fixing and equalizing of values of property for taxation. There is no inconsistency in the law which gives the tax commission unlimited discretion in the matter of fixing and equalizing values, but at the same time puts a reasonable limit on the time in which alone that discretion is to be exercised.

A joint motion was filed in this court by the Attorney General, representing the tax commission, and the attorneys representing all of the relators and interveners, to dismiss this appeal. The two other attorneys representing the tax commission filed an opposition to the motion to dismiss the appeal. Our conclusion that the judgment appealed from is correct and should be affirmed makes it unnecessary to act upon the motion to dismiss the appeal.

The judgment is affirmed.