233 So.2d 592 (1970)
Jacob L. KARNO
v.
LOUISIANA TAX COMMISSION and Lawrence A. Chehardy, Assessor.
No. 4106.
Court of Appeal of Louisiana, Fourth Circuit.
March 9, 1970.
Rehearing Denied April 6, 1970.
Writ Refused June 8, 1970.
*593 Wallace C. LeBrun, Metairie, for plaintiff-appellee.
Jack P. F. Gremillion, Baton Rouge, William P. Schuler, John M. Currier, William P. Curry, Jr., New Orleans, and Eugene J. Murret, New Orleans, for defendant-appellant.
Carr & Kollin, Metairie, for Lawrence A. Chehardy, defendant-appellee.
Before SAMUEL, CHASEZ, REDMANN, BARNETTE and SWIFT, JJ.
SWIFT, Judge.
The plaintiff, Jacob L. Karno, a property owner and taxpayer in Jefferson Parish, Louisiana, filed this suit against the defendants, Louisiana Tax Commission and Lawrence A. Chehardy, Jefferson Parish Assessor, seeking a writ of mandamus commanding the Tax Commission to approve and accept the tax roll of Jefferson Parish for 1969 as submitted by the Assessor to the taxpayers for review in late October and early November, 1969, and ordering the Assessor to file such approved roll with the proper officials. Petitioner contended that the Tax Commission arbitrarily refused to accept the assessment roll on November 17, 1969; that the time provided by law for such body to exercise its discretion to change or correct the assessments had passed; and that he, the Jefferson Parish School Board and the Parish of Jefferson would suffer damages if such roll was not immediately approved by the Tax Commission and filed by the Assessor in accordance with law. Alternatively, in the event of refusal of the writ, the plaintiff prayed that the court declare LSA-Louisiana Constitution, Article 10, Section 2, and certain statutes relative to the creation and administration of the Tax Commission in violation of his rights under the Constitution of the United States, and therefore, unconstitutional.
An alternative writ of mandamus was issued on December 2, 1969, ordering the defendants to approve and file such tax roll immediately or to show cause to the contrary on December 10, 1969.
The Assessor answered on December 3 admitting most of the allegations of the petition, but denying that plaintiff was entitled to the relief sought. Incorporated in the answer was a third party demand against the Tax Commission setting forth that in February it had ordered him to increase to their 1968 valuations all assessments which he had adjusted downward on the 1969 roll; that such order was subsequently rescinded; and that all of the work on the 1969 assessment roll had been duly completed but the Tax Commission had refused to accept it. The Assessor prayed for dismissal of the plaintiff's suit insofar as he was concerned, and in the alternative that the Tax Commission be ordered to act in such a manner that the Assessor could comply with the order of the court.
*594 At 10:00 A.M. on December 8 the Tax Commission filed what it designated a "MOTION FOR CONTINUANCE" setting forth that it would be able to comply with the demands contained in the petition by December 17, and therefore the December 10 hearing should be continued until such date. This was refused by the Trial Judge, and at 10:45 that morning the Tax Commission filed a motion to dismiss or transfer for lack of venue, an exception of prematurity and what was styled a "MOTION TO DISMISS" (although this pleading has been referred to by both counsel and the Trial Judge as an exception of no right or cause of action). In the latter motion it was averred that this defendant had approved and accepted the assessment of petitioner's property as it appeared on the roll submitted by the Assessor without any reduction in valuation. It was also alleged that the Tax Commission had approved and accepted the Jefferson Parish tax roll as submitted by the Assessor for review by the taxpayers, subject to certain orders for changes under LSA-R.S. 47:1900 which were then in the process of being prepared. Consequently, all of the issues in the suit were moot.
Before the motions and the exceptions were heard on December 10, Harry Lee and four other property taxpayers of Jefferson Parish filed a petition of intervention adopting the plaintiff's allegations as their own and joining him in the relief demanded of the defendants.
Trial was commenced as scheduled, and on December 23 judgment was rendered in favor of plaintiff and intervenors and against both defendants. The alternative writ of mandamus was made peremptory, ordering the Tax Commission to approve and accept the tax roll as previously submitted by the Assessor and ordering both defendants to duly notify the Tax Collector and other officials of such action in accordance with law. Also, judgment was rendered in favor of the Assessor on the third party demand ordering the Tax Commission to issue the necessary order approving said tax roll.
The Tax Commission has taken a suspensive appeal from this judgment. The plaintiff and intervenors have answered the appeal contending that the judgment was in error in failing to declare the provisions of law complained of as unconstitutional, but otherwise praying that it be affirmed.
The evidence discloses that in preparing the assessment list for Jefferson Parish for 1969, the Assessor reduced the valuations of approximately 8,000 residential assessments below their respective 1968 valuations. On February 10, 1969, and also on February 20 the Louisiana Tax Commission wrote the Assessor notifying him that, because of a number of complaints from individual taxpayers and one or more officials and also its belief that the ratio between assessments and market value in Jefferson Parish was generally lower than most other parishes in the state, it would not accept any assessments on the 1969 roll that were less than the 1968 assessments of such properties. On March 4 the Assessor replied acknowledging that he would comply with the directive, but setting forth his position with respect to preparation of the 1969 tax list and asking for a hearing before the Commission.
The hearing was held at the Tax Commission's office in Baton Rouge on April 1, and there is a sharp disagreement in the testimony as to just what transpired and the results thereof. In any event it is clear the Tax Commission agreed to and did send C. G. Johnson, its Executive Secretary, and some field men to Jefferson Parish to make a spot check of tax and conveyance records with a view to determining whether there was any basis for the complaints received by the Tax Commission. Thereafter, Leo J. Theriot, Chairman of the Louisiana Tax Commission, wrote Mr. Chehardy that the investigation revealed his roll was in order and the complaints were without foundation and rescinded all *595 prior orders to increase the assessments to their 1968 valuations.
James R. Leake, a member of the Tax Commission, was seriously ill at the time and took no part in the meeting of April 1 or any action of the Commission with respect to the 1969 Jefferson Parish assessment roll. However, the other member, Mrs. Blanche R. Long, emphatically denied that she ever agreed to rescind the Commission's orders to the Assessor of February 10 and 20 or that she was even aware of Mr. Theriot's April 8 letter until a copy thereof was presented to her by Mr. Chehardy's representatives on the evening of November 17. Her position was confirmed by Mr. Johnson, the Executive Secretary. Mr. Chehardy and several of his witnesses were equally certain that Mrs. Long informed him he would not have to increase the assessments to the 1968 figures.
In reliance on Mr. Theriot's letter of April 8, the Assessor published notice and permitted public inspection of his assessment list from April 10 through 30. An abstract of the assessment of property was submitted to the Tax Commission, and for about three weeks during August its field men made their customary study and work on the assessment roll. As a consequence of this study and a review of the assessment listings by the Tax Commission at its meeting on September 18, 1969, the Assessor was advised by letter of September 29 of the approval of the review subject to certain changes in commercial properties which he was directed to make. He was also advised to give notice for public inspection of the listings for a period of 20 days, after which the Parish Council was required to meet and act as a Board of Reviewers to pass on any complaints of the taxpayers and file same with the Commission with recommendations. These directions were complied with, and the Jefferson Parish Council met as a Board of Reviewers on November 6, 1969. One week later the Council met and adopted a resolution accepting the assessment roll as submitted for public inspection from October 17 to November 5, 1969.
The assessment roll was filed by the Assessor with the Tax Collector, the Clerk of Court and the State Auditor on November 14, 1969, without the approval of the Tax Commission required by LSA-R.S. 47:1993. Mr. Chehardy gave as his reason for doing so, that he thought such final approval was a mere formality in this instance, and November 15, the day he was required by law to complete and file his tax roll, was Saturday, a legal holiday.
The following Monday, November 17, the Assessor and several other Jefferson Parish residents appeared at the office of the Tax Commission in Baton Rouge, and in a meeting with the commissioners requested formal approval of the assessment roll. Again there is a conflict in the testimony as to just what transpired at the meeting. However, it is clear no official action was taken by the Commission until later that afternoon when Mrs. Long and Mr. G. Dupre Litton, a newly appointed member who succeeded the deceased Mr. Leake, met in executive session. At that time these two members concluded not to accept the 1969 tax roll until the reduced assessments were raised to their 1968 levels as the Commission had originally directed in its letters to the Assessor of February 10 and 20. A letter to this effect was prepared and signed by Mrs. Long and Mr. Litton and mailed to Mr. Chehardy that afternoon. Mr. Theriot, the Chairman, had left before the executive session, and he has refused to concur in such action of the Tax Commission.
Shortly thereafter Commission personnel commenced the work of preparing the written instructions to change the assessments in question to their 1968 figures under the provisions of LSA-R.S. 47:1990.
This suit was filed on December 2, 1969.
By letter of December 5, signed by Mr. Litton and Mrs. Long, the Tax Commission notified Mr. Chehardy of its acceptance *596 of the tax roll of Jefferson Parish for 1969, as submitted by him for review of the taxpayers from October 17 through November 5, 1969, subject to certain changes in the assessments which were then being effected under the provisions of Section 1990. By a letter of the same date signed by the same members of the Commission the plaintiff, Mr. Karno, was advised that his 1969 assessment as submitted by the Assessor had been approved without change and the Sheriff was authorized to receive and receipt for payment of his taxes in accordance therewith. According to a certificate of Mr. Litton, Mrs. Long and Mr. Johnson, Executive Secretary, dated December 9, 1969, the 1969 tax roll for the Parish of Jefferson had been duly accepted and approved; the roll had been properly filed and all officials legally notified of the acceptance; and every taxpayer whose assessment was changed had been notified by certified mail, return receipt requested, deposited as of 4:30 P.M. that date.
The first question presented for determination is whether or not the appeal to this court was proper in view of LSA-Louisiana Constitution, Article 7, Section 10(5), providing that the Supreme Court "shall have appellate jurisdiction in all cases wherein the constitutionality or legality of any tax, local improvement assessment, toll or impost levied by the State, or by any parish, municipality, board, or subdivision of the State is contested * * *". However, it is clear that the present suit does not involve the constitutionality or legality of a tax. Instead, it is concerned solely with questions relating to reduction and validity of assessments. Therefore, appellate jurisdiction is vested in this court. State ex rel. Zeigler v. Board of Assessors, 107 La. 572, 32 So. 67; Tebault v. City of New Orleans, 108 La. 686, 32 So. 983; Getty v. Richards, 147 La. 204, 84 So. 589.
It is unnecessary to determine whether the proper venue of this suit is in the District Court of East Baton Rouge Parish, the domicile of the Louisiana Tax Commission, or the Twenty-Fourth Judicial District Court for Jefferson Parish, the domicile of the Assessor and where the assessed properties are situated, because unquestionably the Tax Commission has waived this objection.
Article 925 of the Louisiana Code of Civil Procedure requires the objection of improper venue to be pleaded in a declinatory exception, and provides that it is waived when the defendant makes an appearance without doing so. According to Article 7 of such code, a general appearance, which subjects a party to the jurisdiction of the court, is made when "he seeks therein any relief other than * * *" five specific exceptions.
The first pleading presented by the Tax Commission was a motion for a continuance. It was filed before and not at the same time as its declinatory exception objecting to venue, and the relief sought therein was not included in any of the exceptions listed in Article 7. We are unable to agree with counsel's contention that this motion should be construed as an extension of time within which to plead, one of the exceptions in said article. The motion expressly states that the Tax Commission "will be able to comply with the demands contained in the petition or or before December 17, 1969" and therefore the hearing set for December 10 should be continued to be heard on such date. It is obvious the Commission was not seeking any extension of time to plead, because its exception and other motions were already prepared and were filed less than an hour after the continuance was denied. As related in its other motion, the Tax Commission had by this time approved the Assessor's roll, subject to the changes in the assessments it was then making under the provisions of LSA-R.S. 47:1990. Apparently, the Commission expected to complete such changes prior to December 17, and since it intended to comply with what was thought to be the plaintiff's demands there was no need for an extension of time to plead. Thus, the motion for a continuance *597 clearly constituted a general appearance which waived any objection the Commission may have had to the venue of the court.
The more difficult and serious question is whether or not plaintiff or intervenors are entitled to a writ of mandamus under the circumstances presented in this case.
At this point it must be mentioned that we doubt seriously the plaintiff or intervenors can bring a class action on behalf of the other taxpayers whose 1969 assessments were reduced by the Assessor in view of the provision of LSA-R.S. 47:1993 that "* * * in the suit of any taxpayer testing the correctness of his or their assessments before any court of competent jurisdiction, the decision of such shall only affect the assessment of the person or persons in such suit, and shall in no manner affect or invalidate the assessment of any other person or property appearing upon the tax rolls." If not, there does not appear to have been any justiciable issue between the plaintiff and defendants after the Tax Commission approved the roll without changing the assessment of Mr. Karno's property as it was originally submitted by the Assessor. This would not be the case as to the intervenors, however, whose assessments were changed by the Commission when it finally approved the roll. In any event, it is unnecessary to decide these questions in view of the conclusion which we have reached in this case.
Under Article 3862 of our Code of Civil Procedure a writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or, even so, where the delay involved may cause injustice. Article 3863 provides that such a writ "may be directed to a public officer to compel a performance of a ministerial duty required by law * * *".
It is well settled, however, that mandamus will not be directed to a public officer to compel him to perform a discretionary act. In State ex rel. Le Blanc v. Democratic State Central Committee, 229 La. 556, 86 So.2d 192, the Supreme Court said:
"Our jurisprudence has unwaveringly adhered to the doctrine that such a writ lies only to compel the performance of duties that are purely ministerial in nature, duties which are so clear and specific that no element of discretion can be exercised in their performance. When such acts or duties necessarily call for the exercise of judgment and discretion by the officer or body at whose hands their performance is required, this remedy will not avail a complainant * * *"
Also, in State ex rel. Citizens Finance Co. v. James, 213 So.2d 64, at page 65, the Court of Appeal, First Circuit, said:
"Recently, in the case, State ex rel. Hayes v. Louisiana State Board of Barber Examiners, La.App., 208 So.2d 369, writs denied by the Supreme Court on May 17, 1968, in [252] La. [169], 210 So.2d 53, we pointed out that our Code of Civil Procedure contains no authority by which we can compel a public official or board to perform a discretionary act. Though formerly mandamus was a proper method of compelling the performance of discretionary duties when there had been a gross abuse of the discretion vested in a public official, our present Code of Civil Procedure does not retain this jurisprudential rule. LSA-C.C.P. Art. 3863 provides unequivocally that mandamus will lie only to compel the performance of a ministerial duty required by law."
It is the duty of the Tax Commission to fix the value of all taxable property within the state for tax purposes. LSA-R.S. 47:1957 and 1989. In doing so it is authorized to change or correct any and all assessments thereof "in order to make the assessments conform to the true and correct valuation, not to exceed its actual cash value. Such change or correction may be made by the tax commission *598 at any time before the taxes levied have actually been paid." LSA-R.S. 47:1990. Unquestionably, its duties in this respect are discretionary, subject only to the limitations set forth in the constitution and statutes dealing with assessment procedure, as distinguished from ministerial.
Of course, mandamus would lie to compel the Tax Commission to exercise its discretion to change assessments and approve the roll in time for the Assessor to file the assessment roll with the Tax Collector and other officials on or before November 15 of each year as required by law. State ex rel. City of New Orleans v. Louisiana Tax Commission, 171 La. 211, 130 So. 46. However, the court has no authority to issue a writ of mandamus which has the effect of preventing the Commission from exercising the discretion given only to it by the law.
In this instance all changes of assessments had been made under LSA-R.S. 47:1990 and the roll was approved by the Commission on December 9. Therefore, when the case was tried the relief sought and the effect of the judgment rendered were to change the valuations of some 8,000 assessments which had been fixed by the Tax Commission in the exercise of its discretion. Also, in commanding the Commission to finally and unalterably approve the roll as submitted by the Tax Assessor without reservation of its right to change or correct any assessment thereon before the taxes were actually paid, the judgment effectively eliminated this discretionary duty which the Tax Commission conceivably could be required to exercise at some subsequent time before payment of the taxes.
We agree entirely with the Trial Judge in his comment as to why it was unnecessary to decide whether or not the Tax Commission had actually approved Mr. Chehardy's roll at or following its meeting of April 1, "because under the plain language of R.S. 47:1990 the tax commission is granted authority to change the rolls `at any time before the taxes levied have actually been paid.'".
Whether or not the Tax Commission properly exercised its discretion with respect to the changes it made in the 1969 assessments are questions that should have been determined in proceedings for judicial review under the provisions of LSA-R.S. 47:1998. It has not been shown in this case why any party could not have obtained adequate relief from his changed assessment, if so entitled, through such a suit. Nor does it appear that the delay involved in obtaining relief under that statute would cause any injustice. We therefore conclude that mandamus was not the proper remedy under the circumstances presented in this case and the judgment of the Lower Court must be reversed in this respect.
We now turn to appellees' contention that Article 10, Section 2 of the Louisiana Constitution and certain statutes prescribing the assessment procedure are unconstitutional. The only specific attack which they have urged in brief and argument seems to be directed at LSA-R.S. 47:1990. It is contended this statute does not provide sufficient guide lines for the Tax Commission to act and thus insure equal protection of the laws, but instead permits arbitrary and unilateral action by such body.
Although the power of the Commission to fix and change assessments is broad, it is limited by statute as to the time when this may be accomplished and the maximum amount for which any property may be assessed. Also, the law provides specific requirements for giving notice to the taxpayer of a change in his assessment as well as judicial review in case he is dissatisfied with the action of the Commission. LSA-R.S. 47:1957, 1990 and 1998. In our opinion such limitations are sufficient to guarantee equal protection and due process of law to our taxpayers. Therefore, appellee's attack on the constitutionality of these statutes and the article of our Louisiana Constitution is without merit and must be rejected.
*599 Since the Tax Commission had not completed its work and approved the roll at the time this suit was filed, the costs of court, except for this appeal, will be assessed to that public body insofar as is permitted by law.
For the foregoing reasons, the judgment of the Lower Court is reversed, and the suit, the intervention and the third party demand are dismissed. The costs of appeal are to be borne by appellees. The costs incurred in the court below are assessed to appellant insofar as is permitted by law.
Reversed.
REDMANN, Judge (concurring).
Both petitioner and intervenors carefully avoided pleading anything about lowering and raising assessments. The question whether the Tax Commission may increase assessments simply because the assessor lowered them never becomes an issue in this lawsuit, and we therefore properly do not decide the validity of the Commission's action.
The demand of petitioner and intervenors was that the assessor and the Commission provide Commission-approved tax rolls to the appropriate officers for collection of taxes. This demand has been complied with, although the Tax Commission has elected to exercise (rightly or wrongly) its power under LSA-R.S. 47:1990 to change assessments even after its approves the tax rolls as finally prepared by the assessor.
Because the Commission did comply with the demand presented by the pleadings, the lawsuit became moot. But I do not agree that the initial pleadings, filed after the rolls should already have been approved and placed with the proper officers, did not then present a proper case for mandamus. I therefore concur in the effective dismissal of the entire litigation as presented by the pleadings.
REDMANN, Judge (dissenting from denial of rehearing).
R.S. 47:1998 allows only 30 days for taxpayers to file a suit to test Tax Commission action pursuant to R.S. 47:1990.
Thus, unless we grant a rehearing, appellees will presumably never obtain a judicial determination of the essence of their dispute.
I believe we should grant a rehearing, at least in favor of intervenors.