Harold A. **DUNDEE**, Plaintiff-Appellee,

v.

**ORLEANS PARISH BOARD OF SUPERVISORS OF ELECTIONS et al.,**
Defendants-Appellants.

No. 29739
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 4, 1970.

Rehearing Denied and Rehearing En Banc Denied Jan. 29, 1971.

* ▮ Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5th Cir. 1970, 431 F. 2d 409, Part I.

Jack P. F. Gremillion, Atty. Gen., Baton Rouge, La., William P. Schuler, Second Asst. Atty. Gen., Gerald J. Gallinghouse, New Orleans, La., for Orleans Par. Repub. Exec. Comm. and Charles Schwartz, Jr.

Caryl H. Vesy, New Orleans, La., for Orleans Par. Demo. Exec. Comm. and Henry J. Engler, Jr.

Moise W. Dennery, (TA), New Orleans, La., for plaintiff-appellee.

Before GEWIN, GOLDBERG, and DYER, Circuit Judges.

PER CURIAM:

Harold Dundee instituted this suit against the Orleans Parish Board of Supervisors of Elections and others, claiming that the members of the Board of Assessors of Orleans Parish were elected from mal-apportioned districts and that the mal-apportionment constituted invidious discrimination denying him and others of equal protection of the laws. In essence he claimed that the seven member board ought to be apportioned within the parish so that equal numbers of voters could vote for proportionally equal numbers of officials. It was stipulated that the population of the various Municipal Districts of the City of New Orleans, the number of Assessors representing each Municipal District, the percentage of total population of each Municipal District, and the percentage of total representation on the Board of Assessors of each Municipal District is as follows:

| Municipal District | Population 1960 Census | Number of Assessors | Percentage of Total Population | Percentage of Total Representation on Board of Assessors |
|---|---|---|---|---|
| 1 | 56,949 | 1 | 9.1 | 14.28 |
| 2 | 78,275 | 1 | 12.5 | 14.28 |
| 3 | 260,510 | 1 | 41.5 | 14.28 |
| 4 | 56,839 | 1 | 9.0 | 14.28 |
| 5 | 34,415 | 1 | 5.5 | 14.28 |
| 6 | 91,809 | 1 | 14.6 | 14.28 |
| 7 | 48,731 | 1 | 7.8 | 14.28 |

The City, while acknowledging the disparity between the population of the various Municipal Districts, argues that the Board of Assessors performs no "governmental functions" within the meaning of the Supreme Court's opinion in Avery v. Midland County, Texas, 1968, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45, and consequently that it should not be required to apportion the Board on a one-man one-vote basis.

The court below in a carefully written opinion resolved this controversy in favor

of Dundee and ordered that if the Board of Assessors has not been reapportioned within one year after the May 1970 session of the Legislature adjourned the court would order a special election in which each member of the Board would be elected on an at-large basis. Agreeing with the judgment and the opinion of the court below we affirm, adopting that court's opinion which is attached hereto as Appendix I.

Affirmed.

## APPENDIX I

### Opinion

CHRISTENBERRY, J.:

The plaintiff, Harold Dundee, instituted this class action against the defendants, Orleans Parish Board of Supervisors of Elections and Floyd J. Reed, its Chairman; Orleans Parish Democratic Executive Committee and Henry J. Engler, Jr., its Chairman; and Orleans Parish Republican Executive Committee and Charles Schwartz, its Chairman, alleging the apportionment of the seven members of the Board of Assessors for the Parish of Orleans and/or the boundaries of the seven municipal districts of the City of New Orleans is unconstitutional. He contends the present "malapportionment of the Board of Assessors" and "improper districting" of the municipal districts constitutes "invidious discrimination" and denies him and others equal protection of the laws. Relying on Avery v. Midland County, Texas, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), plaintiff states he is entitled to the immediate reapportionment of the Board of Assessors for Orleans Parish, and/or the immediate redistricting of the municipal districts of the City of New Orleans on a one-man, one-vote basis. He prays that a writ of injunction issue prohibiting defendants from holding any election, primary or general, for Assessors for the City of New Orleans, Parish of Orleans, State of Louisiana, other than on an at-large basis, until the Board of Assessors for the Parish of Orleans,

State of Louisiana is properly reapportioned on a one-man, one-vote basis, or the municipal districts of the City of New Orleans, Parish of Orleans, State of Louisiana are properly redistricted on a one-man, one-vote basis.

On September 10, 1969 a pre-trial conference was held in this matter with all counsel present. As a result of this conference a stipulation and amended stipulation of facts between all parties were filed. These stipulations are attached to this opinion. In addition, counsel submitted briefs on the merits of this case. Further, on March 2, 1970, in view of the recent Supreme Court decision in Hadley, et al. v. Junior College District of Metropolitan Kansas City, Missouri, et al, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed. 2d 45 (1970) the Court afforded counsel an opportunity to file supplemental briefs, discussing that decision's effect on the instant case.

Article 14, Section 20 of the Louisiana Constitution provides:

"There shall be seven assessors in the City of New Orleans, who together shall compose the Board of Assessors for the Parish of Orleans. One shall be elected from each municipal district of the City of New Orleans, and they shall be residents of the districts from which they are elected. Their terms shall be four years and they shall be elected at the same time as the municipal officers of the City of New Orleans."

Louisiana Revised Statute 47:1901 (1950) provides for the election of parish assessors. In pertinent part it states:

"In the Parish of Orleans, there shall be elected seven tax assessors, one from each municipal district of the parish."

Plaintiff has attacked these provisions on the grounds that there is a constitutionally protected right to have the Board of Assessors apportioned among the Municipal Districts of Orleans Parish in a manner assuring the plaintiff and others

of equal voting weight with other residents of the parish in electing assessors.

In Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) the Equal Protection Clause of the Fourteenth Amendment was applied to the apportionment of state legislatures. The Court held that every voter in an election for state legislators has a right to an equally weighted ballot to that of every other voter and that this right is impaired when legislators are elected from districts of substantially unequal population.

In Sailors v. Board of Education of the County of Kent, 387 U.S. 105, 87 S. Ct. 1549, 18 L.Ed.2d 650 (1967) the Court upheld an elective-appointive scheme for a school board whose functions were essentially administrative. However, the Court noted:

"At least as respects nonlegislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems as was done here. If we assume *arguendo* that where a State provides for an election of a local official or agency— whether administrative, legislative, or judicial—the requirements of Gray v. Sanders [372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821] and Reynolds v. Sims must be met, no question of that character is presented. For while there was an election here for the local school board, no constitutional complaint is raised respecting that election. Since the choice of members of the county school board did not involve an election and since none was required for these nonlegislative offices, the principle of 'one man, one vote' has no relevancy." 387 U.S. at 111, 87 S.Ct. at 1553.

Again in Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967) the Court assumed arguendo that the apportionment of local units of government was governed by Reynolds. However,

there also, the applicability issue was not met as it was held that the local apportionment plan challenged was not violative of the Reynolds test of "invidious discrimination." 387 U.S. 117, 87 S.Ct. 1554. Dusch involved a municipal plan of apportionment providing for the at-large election of city councilmen who were required to be residents of seven unequally-populated municipal boroughs. The plan was permissible since all of the councilmen were elected by all the municipal voters and each was in effect "the city's, not the borough's, councilman." 387 U.S. 115, 87 S.Ct. 1556.

Subsequently, in Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114 (1968) the Court met the applicability issue squarely and held the one-man, one-vote rule of Reynolds applicable to units of local governments having general governmental powers over the entire geographical area served by the body. The governing body in Avery had the "power to make a large number of decisions having a broad range of impacts on all the citizens of the county." 390 U.S. 483, 88 S.Ct. 1119. For example, it set the tax rate, equalized assessments, issued bonds, prepared budgets for county expenditures and exercised discretion in allotting funds. The Court rejected the argument of both parties that the functions of the unit in question should be labeled "legislative" or "administrative." It said that like most local governmental units in the country, the Avery body's functions were a mixture of legislative, executive, judicial, and administrative.[1] Further the Court said "the *relevant fact* is that the powers of the Commissioners Court include the authority to make a substantial number of decisions that affect all citizens * * *." (Emphasis supplied), 390 U. S. 484, 88 S.Ct. 1120. It appears that the necessity for discovering the performance of "legislative" functions before applying the one-man, one-vote standard

---

1. The Texas Supreme Court had found the body's legislative function to be "negli-

gible." Avery v. Midland County, 406 S.W.2d 422, 426 (Tex.1966).

was rejected by the Court, at least in respect to elected bodies.[2]

In Hadley, et al. v. Junior College District of Metropolitan Kansas City, Missouri, et al., supra, the unit of local government consisted of eight separate school districts that were consolidated to form the Junior College District of Metropolitan Kansas City. The question was whether the one-man, one-vote rule was applicable to the election of trustees of this unit of government. As in Avery the Court again rejected the distinction between "legislative" and "administrative" powers for reapportionment purposes. Instead, the Court considered the impact of the unit's decisions on all the citizens of the District. In reference to the unit's governmental powers the Court said:

"We feel that these powers, while not fully as broad as those of the Midland County Commissioners, certainly show that the trustees perform important governmental functions within the districts, and *we think these powers are general enough and have sufficient impact throughout the district to justify the conclusion that the principle which we applied in Avery should also be applied here.*" (Emphasis added) 397 U.S. 53–54, 90 S.Ct. 794

In Hadley the Court went considerably further than in Avery in applying the one-man, one-vote rule and said:

"While there are differences in the powers of different officials, the crucial consideration is the right of each qualified voter to participate on an equal footing in the election process." 397 U.S. 55, 90 S.Ct. 794.

Further, the Court said that there is no reason why the purpose of an election should be the basis for constitutional distinctions. It was the Court's view that the decision of a state to select an official by popular vote was strong indication that the election is important.

The Court held that:

" * * * as a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis which will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials." 397 U.S. 56, 90 S.Ct. 795

In the instant case, the Plaintiff concedes that the Board of Assessors performs no legislative tasks.[3] However he contends that the Board fixes the assessment of all taxable property within the Parish of Orleans and the amount of ad valorem taxes derived not only by the City of New Orleans, but also by the Orleans Parish School Board and other governmental agencies, both for operational purposes and for the amortization of bonded indebtedness, is directly proportional to the values fixed by the Board of Assessors. It is stipulated by the parties that from 7.5% to 11.2% of the total estimated revenues of the City of New Orleans, according to the current budget of the City, will be derived from the real property ad valorem tax. (See VI of attached stipulation) The plaintiff asserts this fact leads to the "inescapable conclusion" that all citizens of New Orleans, whether property owners or not, are directly affected by the decisions of the Board of Assessors, as are also "the City's growth and existence."

Defendants acknowledge the disparity between the population of the plaintiff's municipal district and that of the other districts (see attached stipulation) but they assert the Equal Protection Clause

---

2. In Sailors, supra, the county board of education was held basically appointive in nature. 387 U.S. at 109, 87 S.Ct. 1549.

3. The Board does not impose any taxes, nor does it issue any bonds.

of the Fourteenth Amendment is not applicable to this case on two grounds. First, it is contended that the Board of Assessors does not fix the assessed value of any taxable real property in Orleans Parish; that the individual assessors submit to the Board only tentative assessments for submission in turn to the Louisiana Tax Commission, which is the final authority in fixing and equalizing assessments. Secondly, the defendants contend that the Board of Assessors does not have general governmental functions but rather has a special function that was not covered by the Court's decisions in Avery and Hadley.

In support of their first contention, defendants cite La.R.S. 47:1957 which provides in pertinent part:

> "§ 1957 *Listing and Assessing of property generally*
>
> All taxable property in the state shall be assessed by the tax commission. The assessors shall be responsible, under the supervision of the tax commission, for listing and assessing all property within their respective parishes, except such property as is subject to direct assessment by the tax commission. All property subject to taxation shall be listed and assessed at actual cash value and the actual cash value of all property fixed by the tax commission shall be the actual cash value for all purposes."

Also, they cite La.R.S. 47:1989, which provides:

> "§ 1989 *Review of assessment lists by the tax commission*
>
> The value of all taxable property in the state shall be fixed by the tax commission. The assessors shall make

up the assessment lists in the manner and method prescribed by the tax commission and shall deliver to the tax commission copies of such lists and abstracts thereof as may be required by the tax commission. The assessors shall furnish the tax commission all data and reasons governing them in fixing valuations and if necessary any assessor shall appear before the tax commission at its domicile or elsewhere or before any member or person authorized to represent the tax commission elsewhere. The tax commission shall pay the actual sworn and itemized expenses of any assessor required to appear outside of his parish."

Defendants assert that since the Board of Assessors does not "provide any binding final action" it should not be subject to reapportionment. Louisiana Revised Statutes 47:1909 (1950) in part provides:

> "§ 1909 *Powers and authority; Orleans. Parish*
>
> The assessors elected in the parish of Orleans in conformity with R.S. 47:-1901, shall constitute a board of assessors for the parish and shall exercise their functions *jointly* in the *assessing* and listing of property in and for the parish." (Emphasis supplied)

It is true that the Board makes only tentative assessments of the taxable property in Orleans Parish. These assessments are subject to review by a Board of Reviewers and the Louisiana Tax Commission. State ex rel. City of New Orleans v. Louisiana Tax Comm., 171 La. 211, 130 So. 46 (1930). See also City of New Orleans v. Comiskey, et als., 232 So.2d 840 (La.App. 4th Cir., 1970).[4]

---

4. Louisiana R.S. 47:1931 (1950) provides:
"*PART II. BOARDS OF REVIEW*
§ 1931. *Membership*
Assessments throughout the state shall be subject to review by boards of reviewers, consisting of the governing authority in each parish, except the parish of Orleans. In the parish of Orleans, the board of reviewers shall consist of the following: the mayor of New Orleans, as chairman, together with other members of the city government, and the president of the board of assessors, and a member of the board of liquidation, and a member of the sewerage and water board (which board members shall be designated by said respective boards), and the president of the Orleans parish school board, and the assessor of the municipal district wherein the property is situated, during the hearing on cases involving assessments of property situated in his district."

However, under the pertinent Louisiana statutes the power to assess is not vested solely in the Louisiana Tax Commission. "To assess property is to place a value on it." New Orleans Great Northern Railroad Co. v. Thomas, 129 La. 128, 130, 55 So. 737, 738 (1911). The only decision on the question of whether the Tax Commission has the exclusive power to assess expressly rejects that interpretation. G. R. McKinney Co. v. La. Tax Commission, 150 So. 452 (La.App. 2nd Cir. 1933). In that case the Court made it clear that the local tax authorities are very much a part of the assessment process even though the work of the parish assessors is only tentative.[5] Further, the power of the Tax Commission to change or correct any or all local assessments has been held to be discretionary, subject only to constitutional and statutory limitations. Karno v. La. Tax Comm., et al, 233 So.2d 592 (La.App. 4th Cir., 1970). Despite the tentative nature of the Board's assessments, for all practical purposes they are final assessments unless some unusual circumstance arises which causes the Tax Commission not to approve the local assessment. For instance, the Louisiana Legislature has provided an administrative remedy by which a dissatisfied Orleans Parish taxpayer may complain about his local assessment to the Board of Reviewers.[6] This group in turn may or may not

La.R.S. 47:1996 (as amended 1959 and 1962) provides:

"§ 1996. *Review and equalization by the tax commission; Orleans parish*

On the eleventh day after the board of reviewers of the parish of Orleans shall have commenced the public hearings as provided herein, the assessment rolls, together with any recommendations in connection therewith, shall be certified to the tax commission. The tax commission shall at once commence the work of fixing and equalizing valuations and review of the assessment rolls of real and personal property in the parish of Orleans and beginning in the year 1963 shall complete its work on or before the fifteenth day of October of each year. The valuation and classification fixed by the tax commission shall be the valuation and classification for the purposes of the city of New Orleans, but the council of the city may adopt a different percentage of such valuations for purposes of city taxation; provided that the percentage of the actual cash valuation of the property assessed in the city of New Orleans for city purposes shall not fall below twenty-five per centum of the actual cash valuation as fixed by the tax commission. As amended Acts 1959, No. 125, § 1; Acts 1962, No. 316, § 1."

5. La.Const. Art. 10, § 12 substantiates this view. It provides:

"§ 12. *Real estate valuation*

Section 12. All real estate, exempt as well as taxable, shall be valued at actual cash value, listed on the assessment rolls and submitted to the Louisiana Tax Commission."

6. La.R.S. 47:1995 (as amended 1962) provides in part:

"§ 1995. *Inspection of assessment rolls and certification to board of reviews; Orleans Parish*

After the assessors have prepared and made up the rolls showing the assessment of real and personal property in the parish of Orleans, the rolls shall be exposed daily for inspection by the taxpayers and other interested persons for a period of fifteen consecutive days from August 1 to August 15. The assessors shall give notice of such exposure for inspection by publication, for a period of ten days in a newspaper of general circulation published in the parish of Orleans."

"After the rolls have been exposed for inspection daily for fifteen consecutive days from August 1 to August 15, the rolls showing all increases or decreases in assessment made or granted by the assessors shall be certified to by the assessors and referred to the board of reviewers for the city of New Orleans, which board shall forthwith begin work of review thereof. The board, for a period of ten consecutive days from the time that the assessment rolls are certified and delivered to it by the assessor shall conduct public hearings for all persons desiring to be heard on the assessments of real and personal property. Notice of such public hearings shall be given by the board of assessors by publication as provided herein for notice of exposure of the rolls for inspection. The board of reviewers shall recommend to the tax commission increases or decreases in any assessment of real or personal property made by the various assessors of the parish of Orleans in accordance with the true conditions found by it."

For a detailed discussion of the administrative remedy available to an Orleans

recommend to the Tax Commission a change in the local assessment. This action could prompt the Commission to exert its authority and override the local assessing body. La.R.S. 47:1990 (1950). However, as a matter of practice this is exceptional.

■■ As noted above, *Sailors* did not involve the question of whether an election of an administrative unit met required constitutional standards. Here the State has provided that the Board of Assessors for Orleans Parish be elected and the general rule of Hadley applies. This court's inquiry must be whether the requirements of the Fourteenth Amendment are met. We hold as a matter of law that they are not. The plaintiff has established that his individual vote in electing the member of the Board of Assessors for his District has been substantially diluted. (See III of attached stipulation) Moreover, it appears that the only basis for such dilution is his place of residence. In *Reynolds, supra,* the Court noted that legitimate exceptions to a strict population standard are constitutionally permissible in the apportionment of a state legislature. It said:

"History indicates, however, that many States have deviated, to a greater or lesser degree, from the equal-population principle in the apportionment of seats in at least one house of their legislatures. So long as the divergences from a strict population standard are based on legitimate considerations incident to the effectuation of a rational state policy, some deviations from the equal-population principle are constitutionally permissible with respect to the apportionment of seats in either or both of the two houses of a bicameral state legislature." (Footnotes omitted). 377 U.S. at 579, 84 S.Ct. at 1390–1391.

The Court then ruled out history, economic interests, or consideration of a geographical area alone, as justifying disparities in a population standard. In this case, no showing has been made by the defendants that would justify the discrimination against the plaintiff under any exception approved by Reynolds.

■ Defendants' second argument is that the Board of Assessors is a special function body specifically not covered by the Avery decision and that the assessors, being special function officers, are not subject to the requirements of Avery. We cannot agree. Defendants' argument stems from the language of the Court in Avery when it stated:

"Were the Commissioners Court a special-purpose unit of government assigned the performance of functions affecting definable groups of constituents more than other constituents, we would have to confront the question whether such a body *may be apportioned in ways* which give greater influence to the citizens most affected by the organization's functions. That question, however, is not presented by this case * * *". (Emphasis supplied) 390 U.S. at 483–484, 88 S.Ct. at 1120.

It is clear that in this passage the Court was discussing the manner of reapportionment, rather than the necessity for it. Further, if we apply the Avery test and consider the extent of the impact created by the Board's decisions, rather than the nature of its duties, it is apparent that the revenue of the City of New Orleans is directly affected by the Board. Thus all the citizens of New Orleans are affected and accordingly, the one-man, one-vote rule is applicable.

The defendants also rely on the language in Hadley where the Court said:

"It is of course possible that there might be some case in which a State elects certain functionaries whose duties are so far removed from normal governmental activities and so disproportionately affect different groups that a popular election in compliance with *Reynolds, supra,* might not be required." 397 U.S. 56, 90 S.Ct. 795

Parish taxpayer required before judicial relief can be obtained, see City of New

Orleans v. Comiskey, et al., 232 So.2d 840 (La.App., 4th Cir., 1970).

The duties of the Board of Assessors, affecting as they do all of the citizens of the City of New Orleans, are not "so far removed from normal governmental activities" as to exempt their election from the requirements of Reynolds. Nor do their decisions "disproportionately affect different groups."

We hold, therefore, that the discrimination existing is invidious, and there is no rational basis for not applying the one-man, one-vote rule.

## RELIEF TO BE GRANTED

Plaintiff does not ask this court to redistrict or reapportion or to order any of the defendants so to do. He seeks only an injunction restraining the defendants from holding any election from members of the Board of Assessors in New Orleans *other than an at-large election* until the proper authority has acted and provided for proportionate representation on the Board of Assessors, either by redistricting or by reapportioning. Further, plaintiff asks this court to retain jurisdiction until proportionate representation on the Board of Assessors has been achieved either by amendment to Article XIV, § 20 of the Louisiana Constitution, or by legislative act, or by amendment to the City Charter or by enactment by the City Council of New Orleans of an appropriate ordinance.

Defendants contend that an injunction would only serve to disrupt the orderly election process, which has already been set in motion, and that injunctive relief should be denied.

The original complaint in this action was filed August 1, 1969. The primary election for assessors in the Parish of Orleans was held on November 8, 1969. The next general election will be held April 7, 1970. (See amended stipulation)

The question of appropriate relief in this case has given this court much concern. In Sims v. Frink, 208 F.Supp. 431 (M.D.Ala.1962), and Sims v. Baggett, 247 F.Supp. 96 (M.D.Ala.1965) the Court, after recognizing the controlling constitutional principles of reapportionment, first afforded the Alabama Legislature an opportunity to reapportion, and then, upon its failure to do so, proceeded to grant judicial relief. It did this following the judicial policy of affording citizens, through their legislature, a reasonable opportunity to secure their political remedies. The Supreme Court in Reynolds v. Sims, supra, 377 U.S. at page 586, 84 S.Ct. at page 1394, expressly approved such a procedure when it stated:

"We feel that the District Court in this case acted in a most proper and commendable manner. * * * And it correctly recognized that legislative reapportionment is primarily a matter for legislative consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so."

█ Cognizant of this language, it is this court's opinion that the formulation of a constitutionally acceptable method of selecting members of the Board of Assessors for Orleans Parish is more properly a legislative function than a judicial one and that the legislature should be afforded an opportunity to act. Moreover, since the primary election for assessors has been held and the general election is imminent, injunctive relief now would be disruptive.[7] Accordingly, injunctive relief will not be ordered at this time. If the Board of Assessors has not been reapportioned constitution-

7. In Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964) the Court said:
"In giving the Delaware Legislature an opportunity to adopt a constitutionally valid plan of legislative apportionment, and in deferring decision until after the November 1962 general election, because of the imminence of that election and the disruptive effect which its decision might have had, the District Court acted in a wise and temperate manner." 377 U.S. at pp. 709–710, 84 S.Ct. at pp. 1457–1458.

**144**

ally within one year after the May 1970 session of the Legislature adjourns, this court will order a special election for the members of the Board of Assessors for Orleans Parish, in which each member of the Board will be elected on an at-large basis. Cf. Dusch v. Davis, supra. In the meantime, the court retains jurisdiction of this action.

New Orleans, Louisiana, this 17th day of March, 1970.

(Signed) HERBERT W. CHRIST-
ENBERRY
United States
District Judge

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.